# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE: ASBESTOS LITIGATION: )
)
*Limited to:* )
)
MARCHIE DOLLY, JR., and )
SANDRA L. DOLLY, individually and as )
Co-Executors of the )
ESTATE OF MARCHIE DOLLY, SR., )
)    C.A. No. N16C-01-086 ASB
Plaintiffs, )
)
v. )
)
PACCAR, INC., )
)
Defendant. )

Submitted: April 5, 2018
Decided: June 28, 2018

## ORDER

Upon Defendant PACCAR Inc.'s Motion for Summary Judgment,
**GRANTED.**

Bartholomew J. Dalton, Esquire, Ipek K. Medford, Esquire, Andrew C. Dalton, Esquire, Michael C. Dalton, Esquire, Dalton & Associates, Cool Spring Meeting House, 1106 West Tenth Street, Wilmington, Delaware 19086; Adam Balick, Esquire, Michael Collins Smith, Esquire (argued), Patrick Smith, Esquire, Balick & Balick, LLC, 711 King Street, Wilmington, Delaware 19801, Attorneys for Plaintiffs Marchie Dolly, Jr. and Sandra L. Dolly, individually and as Co-Executors of the Estate Marchie Dolly, Sr.; Weitz & Luxenberg, P.C., 700 Broadway, New York, New York 10003, of counsel.

Somers S. Price, Jr., Esquire, James M. Kron, Esquire (argued), 1313 North Market Street – 6th Floor, Wilmington, Delaware 19801, Attorneys for Defendant PACCAR Inc.

**WHARTON, J.**

This 28th day of June, 2018, upon consideration of Defendant PACCAR Inc.'s Motion for Summary Judgment,[1] Plaintiffs' Memorandum in Opposition,[2] Defendant's Reply,[3] oral argument, and the record in this matter, it appears to the Court that:

1. Plaintiffs claim that Marchie Dolly, Sr. ("Mr. Dolly"), a non-smoker, was exposed to, *inter alia,* PACCAR Inc.'s ("PACCAR") asbestos containing products over the course of his career as a truck mechanic, and, as a result, developed asbestos-related lung cancer and died. Mr. Dolly died before his deposition could be taken. His son Marchie "Ringo" Dolly, Jr. ("Ringo") serves as the Plaintiffs' product identification witness. Plaintiffs claim that Mr. Dolly was exposed to asbestos-containing brakes, clutches, and gaskets while working on Peterbilt and Kenworth trucks at Ryder Truck Rental ("Ryder") from 1969 to 1985 and General Delivery Trucking ("General Delivery") from 1979 to the late-1980s. Plaintiffs' claims against PACCAR are for negligence, strict product liability, and wrongful death.[4]

2. Defendant PACCAR Inc. is a manufacturer of custom built heavy-duty, over-the-road tractor-trailer trucks. Kenworth Truck and Peterbilt are

---

[1] D.I. 112.
[2] D.I. 120.
[3] D.I. 127.
[4] D.I. 1,40.

2

unincorporated divisions of PACCAR. PACCAR claims it is entitled to summary judgment for four reasons. First, under West Virginia substantive law applicable to this case, Plaintiffs cannot show that Mr. Dolly was frequently and regularly in proximity to asbestos-containing products manufactured, distributed, or sold by PACCAR in a sufficient amount or dose to have caused his asbestos-related lung cancer. PACCAR next argues that summary judgment is appropriate because PACCAR had no duty to warn about hazardous replacement parts it did not manufacture or distribute. Third, PACCAR asserts that Plaintiffs cannot show that Mr. Dolly's exposure to PACCAR's asbestos containing products was the proximate cause of his lung cancer. Finally, PACCAR says it is entitled to summary judgment because Plaintiffs cannot establish that the PACCAR products to which Mr. Dolly allegedly was exposed contained asbestos.

3. In opposition, Plaintiffs maintain that during his career as a truck mechanic Mr. Dolly worked on Peterbilt and Kenworth trucks at Ryder from 1969 to 1991 and part-time at General Delivery from about 1979 to the late-1980s, and that PACCAR's trucks incorporated asbestos-containing brakes, clutches, and gaskets. As a result, Mr. Dolly's exposure to PACCAR's asbestos-containing products was a substantial factor causing his illness. Plaintiffs also argue that PACCAR should be held liable for the asbestos-containing replacement parts of other manufacturers.

3

4.     Super. Ct. Civ. R. 56(c) provides that summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[5] The moving party bears the initial burden of demonstrating that the undisputed facts support its claims or defenses.[6] If the moving party meets its burden, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact to be resolved by the ultimate fact-finder.[7] Summary judgment will be granted if, after viewing the record in the light most favorable to the non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[8] Summary judgment will not be granted if there is a material fact in dispute or if 'it seems desirable to inquire more thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[9] The Court should not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[10]

---

[5] *Merrill v. Crothall-Am., Inc.,* 606 A.2d 96, 99-100 (Del. 1992).
[6] *Moore v. Sizemore,* 405 A.2d 679, 681 (Del. 1979).
[7] *Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del. 1995).
[8] *Merrill,* 606 A.2d at 99-100.
[9] *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1963).
[10] *In re Asbestos Litig.,* 509 A.2d 1116, 1118 (Del. Super. 1986), *aff'd sub nom, Nicolet, Inc. v. Nutt,* 525 A.2d 146 (Del. 1987).

4

5. The first controverted issue the Court considers is whether Ringo, as the only product nexus witness, has provided sufficient evidence so as to raise a genuine issue of material fact as to whether Mr. Dolly worked with sufficient frequency and regularity in proximity to asbestos–containing products manufactured, distributed, or sold by PACCAR. The Court has carefully reviewed Ringo's discovery deposition. Ringo, who became a mechanic himself, testified that over a period of 10 – 12 years, from approximately the ages of 6 or 7 until he was 17 or 18, he would visit his father regularly at Ryder.[11] On those visits, he observed Mr. Dolly doing brake and clutch work, as well as other mechanic work, on the trucks at Ryder, as well as brake work on trailers. He identified the tractors on which Mr. Dolly would have worked as Ford, GMC, Volvo, Kenworth, and Peterbilt, and the trailers as Great Dane, Fruehauf, and Trailmobile.[12] It likely is true that Ringo's ability at 6 or 7 years of age to accurately describe what Mr. Dolly did at work and on what types of trucks is questionable. Still, Ringo was a self-described "motorhead since [he] was little" and "started in the mechanic business before [he] left the family home."[13] Thus, it seems reasonable to conclude that once Ringo determined to follow in his father's professional footsteps, his ability to make observations improved. Nonetheless, Ringo's knowledge of his father's work at

---

[11] D.I. 112, Ex. A at 38,39.
[12] *Id.* at 43,44.
[13] *Id.* at 151,47.

5

Ryder has its limits. He has no knowledge of how many trucks Ryder owned.[14] He does not know when any of the trucks Ryder owned was purchased.[15] He does not know how many of any particular brand of truck Ryder owned.[16] He does not know whether his father performed the first brake job, clutch job, or engine work on any particular truck.[17] He does not know whether his father removed original equipment or replacement equipment from any truck.[18] He does not know where Ryder obtained the replacement parts his father installed.[19] At no point does Ringo testify that he actually saw Mr. Dolly working on a Peterbilt or Kenworth truck. It appears that a fair summary of the state of the record with respect to Mr. Dolly's employment at Ryder is that he worked on an unknown number of trucks, some of which may have been Peterbilts and Kenworths, an unknown number of times, replacing parts of unknown origin with other parts of unknown origin.

6.      Ringo is better positioned to describe Mr. Dolly's work as a mechanic at General Delivery because he worked there himself with his father from 1979 to 1985.[20] Mr. Dolly's part-time employment dates at General Delivery are a bit unclear, but the lack of clarity is of no particular significance since it is not in dispute

---

[14] *Id.* at 113.
[15] *Id.*
[16] *Id.* at 113-14.
[17] *Id.* at 114-15.
[18] *Id.* at 115.
[19] *Id.* at 117.
[20] *Id.* at 108.

that he worked there part-time for a period of years. General Delivery was a trucking company that employed drivers to drive its trucks but also leased trucks to independent owner operators who did not work for General Delivery.[21] The manufacturers of trucks serviced at General Delivery were International, Ford, Kenworth, Peterbilt, GMC, and Volvo.[22] Trailmobile, Great Dane, and Fruehauf were the manufacturers of trailers serviced there.[23] The company kept maintenance logs for its trucks, but not for the ones they leased to owner operators.[24] As to General Delivery's own trucks, Ringo testified that, based on the company's maintenance records, his father removed the original equipment component parts when he serviced those trucks.[25] Consistent with his testimony about his father's work at Ryder, Ringo did not offer any information about how many trucks General Delivery owned itself or leased to owner operators, how many of those trucks were Peterbilt or Kenworth, how many first brake, clutch, or engine jobs his father performed on any of the trucks General Delivery either owned and operated itself or leased to owner operators, or how many first brake, clutch, or engine jobs his father may have performed on Peterbilt or Kenworth trucks.[26] Again, Ringo did not testify

---

[21] *Id.* at 51.
[22] *Id.* at 57.
[23] *Id.*
[24] *Id.* at 64.
[25] *Id.*
[26] *See generally, Id.*

7

that he actually saw his father work on a Peterbilt or Kenworth truck. In sum, Ringo offers little more in the way of product identification with respect to Mr. Dolly's work at General Delivery than he did at Ryder, except perhaps to the extent Mr. Dolly may have worked on Peterbilt or Kenworth trucks that General Delivery bought new and continued to operate itself, it can be inferred that he would have removed original equipment component parts.

7.    West Virginia substantive law applies. Unfortunately, it appears that the Supreme Court of Appeals of West Virginia has not spoken authoritatively on the issue of causation in the asbestos context, and the parties do not agree on what it would say if and when it does. PACCAR takes the position that under West Virginia law the proximate cause of an injury is "'the last negligent act contributing to the injury and without which the injury would not have occurred.'"[27] Additionally, it must be the "'superior' or 'controlling' event or conduct, 'distinguished from those cases which are merely incidental or subsidiary...'"[28] PACCAR further argues that in the toxic tort context, West Virginia has a dose requirement to establish causation, "'[A] mere possibility of causation is not sufficient to allow a reasonable juror to find causation...Critical to establishing exposure to a toxic chemical is knowledge of the dose or exposure amount and the duration of the exposure.'"[29] PACCR points

[27] D.I. 112 at 9 (quoting *Spencer v. McClure*, 618 S.E.2d 451, 455 (W.Va. 2005)).
[28] *Id.* (quoting *Yates v. Mancari,* 168 S.E.2d 746 (W.Va. 1969)).
[29] *Id.* at 10 (quoting *Tolley v. ACR Industries, Inc.*, 575 S.E.2d 158, 169 (W.Va.

8

out that this Court followed that interpretation of West Virginia law when it granted a defense motion for summary judgment saying, "'[p]roof of causation must be such as to suggest probability rather than mere possibility. Precisely to guard against raw speculation by the factfinder.... Critical to establishing exposure to a toxic chemical is knowledge of the dose or exposure amount and duration of the exposure.'"[30] With respect to replacement parts, PACCAR cites *Baughman v. General Motors Corp.*,[31] for the proposition that truck manufacturers have no duty to warn about replacement parts they did not design, manufacture or supply.[32] PACCAR points out that this Court adopted *Baughman* as controlling West Virginia law.[33] Based on its interpretation of West Virginia law PACCAR urges this Court to conclude that Plaintiffs cannot show that Mr. Dolly was frequently and regularly in proximity to asbestos-containing products manufactured, or distributed by PACCAR and that PACCAR had no duty to warn about the hazards of products it did not manufacture or distribute.

8.      Plaintiffs acknowledge that the Supreme Court of Appeals of West Virginia has not addressed what evidence a plaintiff must present to survive

---

2002)).

[30] *Id.* (quoting *In re Asbestos Litig. (Mills)*, C.A. No. N12C-07-222 ASB (Del. Super. Ct.)).

[31] 780 F.2d 1131, 1132 (4th Cir. 1986).

[32] D.I. 112 at 10.

[33] *Id.* at 11 (citing *In re Asbestos (Mills)*).

9

summary judgment in an asbestos case, but suggest that the federal courts' "best guess appears to be that West Virginia would apply the *Lohrmann* standard of duration, intensity, and frequency."[34] Plaintiffs contend that the requirement of knowledge of dose or exposure amount has never been strictly applied in the context of asbestos exposure.[35] Citing *Ilosky v. Michelin Tire Corp.,*[36] a case that did not involve asbestos, Plaintiffs also suggest that the issue of whether a manufacturer defendant adequately warned an end user of a product's dangers is a jury question.[37]

9. Interestingly, both PACCAR and Plaintiffs cite *White v. Dow Chemical* on the issue of causation.[38] In truth, *White* has language that supports both arguments. "'In a long line of decisions of this Circuit, we have emphasized that proof of causation must be such as to suggest "probability" rather than mere "possibility," precisely to guard against raw speculation by the fact finder."'[39] Citing *Lohrmann,* the court then says, "To meet this burden, a plaintiff must demonstrate the amount, duration, intensity, and frequency of exposure."[40] But the court also

---

[34] D.I. 120 at 6, citing *Modley v. 20ᵗʰ Century Glove Corp. of Texas,* 2010 WL 7746400, at *1 (E.D. Pa. Nov. 19, 2010); *White v. Dow Chem. Co.,* 321 F. App'x. 266, 273-74 (4ᵗʰ Cir. 2009) (citing *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1162-63 (4ᵗʰ Cir. 186)).

[35] D.I. 120 at 7.

[36] 307 S.E.2d 603, 607 (W. Va. 1983).

[37] D.I. 120 at 9.

[38] 321 F. App'x. 266 (4ᵗʰ Cir. 2009); D.I. 112 at 10; D.I. 120 at 10 n. 20.

[39] *White* at 273. (quoting *Sakaria v. Transworld Airlines,* 8 F.3d 164, 172-73 (4ᵗʰ Cir. 1993).

[40] *Id.*

10

says, "'Critical to establishing exposure to a toxic chemical is knowledge of the dose or exposure amount and the duration of the exposure.'"[41]

10. In the end though, it does not matter here whether West Virginia substantive law requires evidence of a dose or exposure amount or whether it requires only *Lohrmann's* evidence of amount, duration, intensity, and frequency. Plaintiffs fail to meet either test. The record simply does not contain any evidence of even approximate numbers of Peterbilt or Kenworth trucks on which Mr. Dolly worked at either Ryder or General Delivery, or how frequently he worked on them. Similarly, the record does not contain any evidence of how many times or how frequently Mr. Dolly either removed or replaced original equipment parts manufactured or distributed by PACCAR.[42] When asked these types of quantitative questions, Ringo demurred. Asking a jury to make those determinations where Ringo declined, would amount to an improper invitation for the jury to engage in speculation. There is simply nothing in the record before the Court that would allow a jury to determine the amount, duration, frequency, and intensity, much less the dose or exposure amount, of Mr. Dolly's exposure to Peterbilt or Kenworth trucks

---

[41] *Id.* (quoting *Tolley v. ACR Industries, Inc.*, 575 S.E.2d 158, 169 (W.Va. 2002).
[42] It was only during Mr. Dolly's part-time work at General Delivery that there is any evidence in the record that Mr. Dolly performed the first brake, clutch, or engine work on any truck. However, that work was limited to the unknown number of trucks General Delivery itself operated and for which it maintained service records. Of that unknown number, there is no evidence how many, if any, were Peterbilts or Kenworths.

11

without indulging in raw speculation. Because of the inadequacy of Plaintiffs' evidence establishing, even roughly, how many Peterbilt and/or Kenworth trucks Mr. Dolly worked on, if any, it is unnecessary for the Court to decide whether PACCAR's potential liability would have been limited to original equipment components or whether it would be liable for any replacement parts regardless of manufacturer.

Therefore, there being no genuine issue of material fact on the issue of Mr. Dolly's exposure to PACCAR's products, Defendant PACCAR Inc.'s Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

12