NICOLET, INC., Defendant
Below, Appellant,

v.

Earl R. NUTT, et al., Plaintiffs
Below, Appellees.

Supreme Court of Delaware.

Submitted: Sept. 30, 1986.
Decided: April 28, 1987.
Revised: April 30, 1987.

Jeffrey M. Austin (argued) and Howard M. Berg, Howard M. Berg & Associates, P.A., Wilmington, for appellant.

Thomas C. Crumplar (argued), Mary Ann Matuszewski, Robert Jacobs and Douglas B. Canfield, Jacobs & Crumplar, P.A., Wilmington, for appellees.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

MOORE, Justice.

Plaintiffs[1] have sued various asbestos manufacturers seeking damages for injuries caused by exposure to asbestos at the E.I. DuPont de Nemours & Co., Inc., plant located in Newport, Delaware. The appellant, Nicolet, Inc., is the only defendant involved in this interlocutory appeal. Plaintiffs allege that Nicolet participated in an industrywide conspiracy with other asbestos manufacturers to intentionally misrepresent and suppress information concerning the health hazards of asbestos and thus is liable for the asbestos-related injuries sustained by the various plaintiffs.[2]

The sole issue here, and a matter of first impression, is whether a cause of action exists against a party whose asbestos products did not cause the purported injury, but who allegedly conspired with other asbestos manufacturers to actively suppress and intentionally misrepresent medical evidence warning of the health hazards of asbestos. The Superior Court denied Nicolet's motion for summary judgment on this point, and recognized such a cause of action. *See In re Asbestos Litigation*, Del.Super., 509 A.2d 1116 (1986). We affirm that ruling. Thus, if competent medical evidence as to the dangers of asbestos was intentionally misrepresented and suppressed in order to cause plaintiffs to remain ignorant thereof, coupled with proof that such suppression caused injury to a plaintiff, the alleged tort is established. Therefore, we conclude that under the well-settled law of civil conspiracy, Nicolet may be jointly and severally liable for damages caused by the acts of co-conspirators if such acts were committed in furtherance of the scheme.

I.

The issue before us arises from plaintiffs' allegations that the defendants, including Nicolet, "knowingly and willfully conspired and agreed among themselves" to:

8.  (b) Cause to be positively asserted to plaintiffs in a manner not warranted by the information possessed by said defendants, that which was and is not true, to wit, that it was safe for plaintiffs to work in close proximity to such [asbestos] materials;

(c) Suppress said medical and scientific data and other knowledge, causing plaintiffs to be and remain ignorant thereof.

Nicolet moved for summary judgment, (1) alleging that plaintiffs could not show the required nexus between it and the injury-causing asbestos products, and (2) on the conspiracy claim for plaintiffs' failure to state a cause of action. The Superior Court granted partial summary judgment

---

1. The eleven plaintiffs in this action are: Earl and Gladys Nutt, Richard and Betty Taylor, Horace and Charlotte Taylor, Oscar and Cleta Hardy, the Estate of George Ward (represented by decedent's wife, Louise), Louise Ward, individually, and Edward Perkins.

2. This is one of over 100 such lawsuits currently pending in Delaware courts. The different actions all allege that the defendants participated in an industrywide conspiracy to suppress information concerning the health hazards of asbestos.

in favor of Nicolet on the product nexus issue, but denied the motion as to the conspiracy count. The only issue on appeal is whether denial of summary judgment on the conspiracy claim was erroneous.

In examining the plaintiffs' allegations, the trial court summarized them as follows:

(1) Nicolet or its wholly-owned Canadian subsidiary, Nicolet Mines, Ltd., was a member of the Quebec Asbestos Mining Association ("QAMA") from 1948 until 1968 and a member of the Asbestos Textile Institute ("ATI") in 1969, 1971 and 1972; and

(2) Members of the referenced trade associations suppressed publication as well as general dissemination of medical and scientific data concerning the health hazards associated with inhalation of asbestos fibers.

While the trial court's published opinion states that Nicolet did not dispute the fact that the members of QAMA and ATI intentionally suppressed information on the dangers of working with asbestos from the 1930's up to and including the 1970's, we have learned that the trial judge orally acknowledged on a motion for reargument that there was such a dispute. *In re Asbestos Litigation*, Del.Super., 509 A.2d 1116, 1120–21 (1986). This latter circumstance was not called to our attention in the briefs, but it underscores a disputed material fact upon which summary judgment was properly denied.

However, the trial court correctly noted that:

... Nicolet [does not] dispute that the plaintiffs were exposed to the asbestos of other companies who were members of QAMA or A.T.I. Instead, Nicolet denies that it was a member of QAMA or that it knowingly took part in this conspiracy.

"Knowing participation" in a conspiracy, however, need not be an express agreement; tacit ratification is sufficient ... Likewise, consciously parallel action is not sufficient to show conspiracy, but it is enough that knowing concerted action was contemplated or invited, the de-

fendant adhered to the scheme and participated in it ...

There is at least some evidence that Nicolet had direct contact with members of QAMA, which members subsequent to the March 1968 meeting publically minimized the dangers of asbestos.

*Id.* at 1120–21.

There are several items of evidence supporting the plaintiffs' claims and giving rise to triable issues of fact. A letter from M.Q. Scowcroft of Raybestos-Manhattan, sent to Johns-Manville, copying members of ATI's Board of Governors, dated May 28, 1969, stated in part:

"We feel it expedient to submit a letter prior to June 15th in order to contribute to discouraging a development program on substitutes for asbestos in shipboard insulation."

On May 26, 1969, the president of Nicolet responded to a Navy inquiry about asbestos dangers with the following letter:

Considerable research is now being conducted on the biological effects of asbestos fiber.

\* \* \* \* \* \*

But more importantly, the results of the research which currently is being reported leaves in substantial doubt, the question of whether or not and to what degree, asbestos fibers may be harmful to health.

\* \* \* \* \* \*

If asbestos fibers are harmful to health, we do not yet know why, nor do we know under what circumstances asbestos may cause undesirable effects or even whether asbestos used alone can cause any harm to human tissues.

The trial judge noted the following excerpts from a learned treatise by Barry I. Castleman, in considering the allegations that QAMA, ATI and Nicolet actively suppressed relevant medical evidence:

In summary, asbestosis was by 1935 widely recognized as a mortal threat affecting a large fraction of those who had regularly worked with the material.

\* \* \* \* \* \*

The carcinogenicity of asbestos was widely recognized by Nordmann, Hornig, and Koelsch in Germany in 1938 ...

The unpublished records cited in this accounting show U.S. asbestos industry officials to have been concerned about cancer and aware of medical reports by 1943. Some of the more startling data were actually published by the medical officer of Cape Asbestos, Hubert Wyers, in 1949. Dr. Hueper was meanwhile being quoted in popular writings, and this along with his scientific reports were matters of great concern to members of the U.S. asbestos industry by the mid–1950's.

B. Castleman, *Asbestos: Medical and Legal Aspects* 31, 102–03 (1984).

■ When viewing all of this evidence in the light most favorable to the non-moving party, for summary judgment purposes, the trial court concluded that the record contained some evidence from which a jury could reasonably find that the alleged conspiracy existed.

### II.

■ To establish a prima facie case of intentional misrepresentation (fraudulent concealment), the following elements must be proven:

(1) Deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak;

(2) That the defendant acted with scienter;

(3) An intent to induce plaintiff's reliance upon the concealment;

(4) Causation; and

(5) Damages resulting from the concealment.

*See Stephenson v. Capano Development, Inc.,* Del.Supr., 462 A.2d 1069, 1074 (1983). Generally, there is no duty to disclose a material fact or opinion, unless the defendant had a duty to speak. However, where one *actively* conceals a material fact, such person is liable for damages caused by such conduct.

In *Stephenson,* this Court outlined the different theories upon which a tort action for fraud may be based: "... [F]raud does not consist merely of overt misrepresentations. It may also occur through *deliberate concealment* of material facts, *or* by silence in the face of a duty to speak ..." *Id.* at 1074 (emphasis added). Further, one who actively and fraudulently conceals information is liable for the physical harm caused by such conduct. Thus, it has also been said that:

A single word, even a nod or a wink or a shake of the head or a smile or gesture intended to induce another to believe in the existence of a nonexisting fact may be fraud.

*Gibbons v. Brandt,* 170 F.2d 385, 391 (7th Cir.1948), *cert. denied,* 336 U.S. 910, 69 S.Ct. 511, 93 L.Ed. 1074, *reh'g denied,* 336 U.S. 929, 69 S.Ct. 643, 93 L.Ed. 1090 (1949).

■ Here, plaintiffs claim that the conspiracy, which allegedly included Nicolet, caused "to be positively asserted to plaintiffs in a manner not warranted by the information possessed by said defendants, that which was and is not true ... that it was safe for plaintiffs to work in close proximity to such [asbestos] materials" and that the conspiracy suppressed "medical and scientific data and other knowledge, causing plaintiffs to be and remain ignorant thereof." The complaint clearly alleges scienter in that the participants "knowingly and willfully conspired" in the scheme. Finally, the complaint alleges an intent by the alleged conspirators to induce plaintiffs' reliance on false or incomplete material facts. In our opinion these allegations are sufficient to state a tort claim based on a theory of fraudulent concealment.

### III.

■ The complaint clearly charges Nicolet with membership in the conspiracy, and if supported by a preponderance of the evidence at trial, Delaware law imposing liability for civil conspiracy is well settled. Plaintiffs must prove:

(1) A confederation or combination of two or more persons;

(2) An unlawful act done in furtherance of the conspiracy; and

(3) Actual damage.

*McLaughlin v. Copeland,* 455 F.Supp. 749, 752 (D.Del.1978), *aff'd,* 595 F.2d 1213 (3d Cir.1979).

■ Under Delaware law, a conspirator is jointly and severally liable for the acts of co-conspirators committed in furtherance of the conspiracy. *Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* Del. Supr., 372 A.2d 168, 170 (1976). Thus, Nicolet is subject to liability if plaintiffs establish that: (1) Nicolet was a member of a conspiracy consisting of asbestos manufacturers; (2) a member of the conspiracy, acting in furtherance of the conspiracy, actively suppressed data on the harmful effects of asbestos with the intent to hide such information from plaintiffs in order to induce them to continue their exposure (i.e., committed the tort of intentional misrepresentation); and, (3) plaintiffs were injured as a result of the unlawful acts of Nicolet's co-conspirator(s).

■ Nicolet contends that there is no independent tort here to support conspiracy liability. We disagree. The independent tort supporting this conspiracy is intentional misrepresentation. Nicolet errs in its legal analysis of the issues. Nicolet argues that it had no duty to warn the customers of other asbestos manufacturers regarding the hazards of exposure to asbestos. That is a correct statement of the law, but it is irrelevant here. We distinguish between circumstances where a party fails to speak, and the allegations here, that a party *actively* suppressed and concealed material information. In the former situa-tion, there is no duty to speak absent a fiduciary or contractual relationship. In the latter, liability attaches as a result of the *active* misconduct of intentionally suppressing material information. Should plaintiffs establish that Nicolet was a member of a conspiracy which actively suppressed and concealed material facts, with the intent to induce plaintiffs' continued exposure to asbestos, Nicolet would be jointly and severally liable with its co-conspirators for resulting damages.[3]

As noted, the only issue on this interlocutory appeal is the existence of a cause of action for intentional misrepresentation absent a contractual or fiduciary relationship between the plaintiffs and the defendant. We do not consider the quantum of proof at trial necessary to sustain the conspiracy claim against Nicolet. That issue was not briefed by the parties and we do not address it.[4]

For the foregoing reasons, the Superior Court's order denying Nicolet's motion for summary judgment on the conspiracy issue is

AFFIRMED.

---

3. Nicolet cites *Burnette v. Nicolet, Inc.,* No. 84–2063 (4th Cir. July 25, 1986) (Phillips, J.) for the proposition that a cause of action does not exist for fraudulent concealment absent a contractual or fiduciary duty. *Burdette,* slip. op. at 6. We decline to adopt the limitations imposed under the Fourth Circuit's interpretation of North Carolina law. We believe that the more reasoned approach is to recognize a cause of action for fraudulent concealment wherever plaintiff can establish active, rather than passive, concealment. In our opinion there is active concealment where members of an association participate in acts found to constitute the tort of fraudulent concealment. *See Marshall v. Celo-*

*tex, Corp.,* 652 F.Supp. 1581 (E.D.Mich.1987) ("if manufacturers cooperate to conceal product risk, and if the concealed risk subsequently causes injury, justice demands a remedy").

4. Nicolet's reply brief clearly states that they are not appealing this question:

Obviously, the lower court's rulings which address the issue of whether the *Nutt* plaintiffs have proffered the minimum amount of evidence necessary to pursue a conspiracy claim against Nicolet is beyond the scope of this appeal.