# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TRUST ROBIN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0806-SG |
| | ) | |
| TISSUE ANALYTICS, INC. and | ) | |
| NET HEALTH SYSTEMS INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Date Submitted:  October 13, 2022
Date Decided:  December 2, 2022

Stephen C. Norman and Jaclyn C. Levy, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, *Attorneys for Plaintiff Trust Robin, Inc*.

Gary W. Lipkin of SAUL EWING ARNSTEIN & LEHR, LLP, Wilmington, Delaware, *Attorney for Defendants Net Health Systems, Inc. and Tissue Analytics, Inc.*

**GLASSCOCK, Vice Chancellor**

This matter arises from the relationship (the form of which is an item of dispute) between two entities that came together to develop and market a "digital" wound-care product.[1]  One of the entities, a party Defendant here, merged with a competitor of the other entity, the Plaintiff.  Per the operative complaint (the "Amended Complaint"), much mischief followed.

This is a court of limited jurisdiction, and the first order of judicial business was to determine whether equitable jurisdiction inhered in the allegations of the Amended Complaint.  In my Memorandum Opinion of September 29, 2022 (the "September Opinion"), I held that this Court has subject matter jurisdiction over the Plaintiffs claims, based on the sufficiency of a cause of action sounding in equitable fraud.[2]  However, I noted in the September Opinion that, with the exception of the equitable fraud claim, the Plaintiff's remaining causes of action were still subject to the Defendant's pending motion to dismiss under Rule 12(b)(6).[3]

The Amended Complaint contains ten counts, some of which are pled in the alternative: common law fraud, fraudulent concealment, fraudulent inducement, equitable fraud, breach of contract, tortious interference with contract, tortious interference with prospective economic advantage, unjust enrichment, civil

---

[1] That is, an online source for wound-care treatment, not a product to treat wounded fingers.
[2] *Tr. Robin, Inc. v. Tissue Analytics*, *Inc.*, 2022 WL 4545174, at *4 (Del. Ch. Sept. 29, 2022) [the "September Opinion"].
[3] Defs.' Mot. to Dismiss the Am. Compl., Dkt. No. 21.

conspiracy, and breach of the implied covenant of good faith and fair dealing.[4]  In the September Opinion, I instructed the parties to discuss the claims in light of my decision and to advise me as to which claims remain subject to the Motion to Dismiss.[5]  On October 13, 2022, the parties requested a decision on all claims.[6]  Accordingly, this Memorandum Opinion addresses the nine remaining claims.

The Amended Complaint leads the Court on a frolicsome romp through allegations of both breaches of contract and a substantial number of contract-adjacent torts.  It is rarely a sign of strength in a pleading, in my experience, that it asserts numerous, and often redundant and overlapping, claims based on a single, rather straightforward set of facts; nonetheless, this matter is before me at the pleadings stage, on a motion that entitles the Plaintiff to all reasonable inferences with respect to each count pled.  Although some of the causes of action are redundant—a situation that will necessarily be resolved in the course of litigation—I cannot on this record grant the Motion to Dismiss with respect to any particular claim of the Amended Complaint.

My reasoning follows an examination of the factual background, below.

---

[4] Verified Am. Compl. ¶¶ 53–108, Dkt. No. 14 [the "Compl."].
[5] September Opinion at *4.
[6] Letter to Vice Chancellor Glasscock regarding the Mot. to Dismiss, Dkt. No. 48.

# I. FACTUAL BACKGROUND

Unless otherwise noted, the facts referenced in this section are drawn from the Amended Complaint, exhibits thereto, and documents they incorporate by reference.

## A. The Parties

Plaintiff Trust Robin, Inc. ("Trust Robin") is a Canadian corporation founded in 2016 that planned to become an early innovator in digital wound care management.[7] The company rebranded in April 2020 as iWound, seeking to provide an all-in-one digital platform through which patients, healthcare providers, and clinicians could easily exchange communications and patient data, allowing for improved remote monitoring of patient wounds throughout the healing process.[8]

Defendant Tissue Analytics, Inc. ("Tissue Analytics") is a Delaware corporation with principal place of business in Baltimore, Maryland.[9] It specializes in the development of artificial intelligence-powered software for the healthcare sector.[10]

Defendant Net Health Systems, Inc. ("Net Health") is a Pennsylvania corporation that provides cloud-based software for medical providers.[11] Its principal

---

[7] Compl. ¶¶ 2, 10, 20.
[8] *Id.* ¶ 10.
[9] *Id.* ¶ 11.
[10] *Id.*
[11] *Id.* ¶ 12.

place of business is in Pittsburgh, Pennsylvania.[12] Following an April 2020 merger, Tissue Analytics became a wholly owned subsidiary of Net Health.[13]

### B. The Trust Robin – Tissue Analytics Deal

According to the Amended Complaint, digital wound care applications have the potential to deliver safer, faster, more convenient healing results to patients by putting them in contact with healthcare professionals who can provide monitoring and advice remotely.[14] As of 2021, the United States market alone for apps of this type was an estimated $10 billion, with the global market projected to grow at a compounded annual rate of 17.7% through 2028.[15]

Trust Robin sought to establish itself as a first mover in this area by bringing iWound, the first user-friendly digital wound care technology and education platform, to market.[16] However, in order to bring its vision to fruition, Trust Robin needed a collaborator with software development expertise.[17] Tissue Analytics' experience with both software development and the healthcare sector made it an attractive candidate, and the two companies began discussing collaboration in fall 2019.[18] Each party would bring something valuable to the table: in addition to the

---

[12] *Id.*
[13] *Id.* ¶¶ 11, 16.
[14] *Id.* ¶ 17.
[15] *Id.* ¶ 18.
[16] *Id.* ¶ 2.
[17] *Id.*
[18] *Id.* ¶¶ 11, 20, 21.

business concept, Trust Robin would provide educational materials for both patients and healthcare providers, along with its proprietary Wound Assist kit program, while Tissue Analytics would develop a cloud-based wound care imaging solution for integration with an "app."[19] In October 2019, the companies memorialized these discussions in a Memorandum of Understanding, under which the parties also agreed to work together to market the iWound app.[20]

### C. Negotiations Continue, Net Health Enters the Equation

The Plaintiff states on information and belief that Tissue Analytics was discussing a merger with Net Health as early as October 2019.[21] If so, during Tissue Analytics' initial discussions with Trust Robin, Tissue Analytics failed to disclose to Trust Robin that it was already in the process of being acquired by Net Health, a Trust Robin competitor.[22] This acquisition put Tissue Analytics in a delicate position: while collaboration with Trust Robin had the potential to boost the software developer's revenue and, through it, sale price, Trust Robin's iWound app represented a worrisome incursion into Net Health's home territory of cloud-based healthcare software.[23] Faced with these conflicting concerns, Tissue Analytics

---

[19] *Id.* ¶ 21.
[20] *Id.* ¶ 23.
[21] *Id.* ¶ 24.
[22] *Id.*
[23] *Id.*

decided to pursue collaboration with Trust Robin, all while continuing to play things close to the vest with regards to the pending acquisition.[24]

Against this backdrop, Tissue Analytics and Trust Robin moved to formalize their relationship in November 2019 by signing a contractual work order (the "Work Order"), which set forth the parties' responsibilities, including co-marketing and revenue sharing.[25] In addition to shared revenues, Trust Robin agreed to pay a monthly fee in exchange for Tissue Analytics' development and maintenance of Trust Robin's software.[26] Tissue Analytics also agreed to resolve errors within specified timeframes and complete the iWound app in time for a Q2 2020 deadline.[27]

Concurrently, the parties entered a Master License & Services Agreement (the "MLSA"), which provided a more comprehensive legal framework governing the work orders, including a provision limiting Tissue Analytics' liability for contract claims.[28] However, this limitation does not extend to fraud claims, nor do any of the agreements entered by the parties contain an anti-reliance provision.[29] The MLSA also contains a clause expressly disclaiming the existence of a partnership between

---

[24] *Id.* ¶ 25.
[25] *Id.* ¶¶ 26-27.
[26] *Id.* ¶ 26.
[27] *Id.*
[28] *Id.* ¶¶ 26, 29, 30; *See* Defs.' Opening Br. Supp. Mot. to Dismiss, Ex. B, Dkt. No. 12 [the "WO & MLSA"].
[29] Compl. ¶ 30.

Trust Robin and Tissue Analytics, instead purporting to define the parties' relationship as that of independent contractors.[30]

### D. Relations Continue to Deteriorate

The development of the iWound application and its integration into Tissue Analytics' platform began in December 2019.[31] Trust Robin avers that, from the start, Net Health and Tissue Analytics implemented a strategy to delay iWound's progress while developing a competing app of their own.[32] Net Health's acquisition of Tissue Analytics was finalized in April 2020, with Trust Robin finally learning of the sale on May 14 when it was publicly announced.[33] Following this announcement, former Tissue Analytics representatives, now employed at Net Health, assured Trust Robin that Net Health was committed to the iWound development partnership, even suggesting that Net Health might purchase Trust Robin.[34] Based on these representations, Trust Robin continued to supply Defendants with licensing fees, intellectual property, business plans, and lists of potential customers.[35]

---

[30] WO & MLSA at 21.
[31] Compl. ¶ 31.
[32] Id.
[33] Id. ¶ 33.
[34] Id. ¶¶ 6, 34.
[35] Id. ¶ 7.

Per Plaintiff, in the following months, Net Health representatives repeatedly assured Plaintiff that the Trust Robin-Tissue Analytics deal was secure and that Net Health was supportive.[36] However, by November the relationship was deteriorating, as iWound's development remained stalled and Tissue Analytics failed to resolve errors within the timeframes specified in the Work Order.[37] The consequences of these delays were also making themselves known, as the incomplete iWound app caused Trust Robin to lose out on numerous business and funding opportunities.[38] Meanwhile, as development deadlines for iWound came and went,[39] Defendants were making use of the resources shared by Trust Robin, including its business plan and intellectual property, to develop their own competing product, Net Health Wound Care.[40] By March 2021, Net Health Wound Care was competing with Trust Robin's iWound directly, if not openly, for customers.[41]

By that spring, relations between the parties had deteriorated even further, with both sides accusing each other of breaching the Work Order.[42] Having concluded that further cooperation with Defendants was impossible, Trust Robin

---

[36] *Id.* ¶¶ 34-36.
[37] *Id.* ¶ 37.
[38] *Id.* ¶¶ 39, 43, 45, 46.
[39] *Id.* ¶¶ 40-41.
[40] *Id.* ¶ 38 (formerly WoundExpert).
[41] *Id.* ¶ 45.
[42] *Id.* ¶¶ 49-50.

partnered with a new software developer.[43]  Together they were able to complete the iWound app, which had previously languished for two years, in just four months.[44]

The Amended Complaint resulted.

## II. ANALYSIS

This matter is before me on a motion to dismiss under Rule 12(b)(6).  At this stage, I must accept all well-pled allegations as true, including even vague allegations when they provide the opposing party notice of the claim.[45]  I must also "draw all reasonable inferences in favor of the non-moving party[,]" at least where these inferences logically flow from particularized facts alleged, dismissing a claim only where the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[46]  The Amended Complaint contains a festive cornucopia of claims, to which I now turn.

### A. Count V: Breach of the Work Order and MLSA

I begin my analysis with an examination of the breach of contract cause of action, which is central to many of this suit's claims and arguments.  To state a claim for breach of contract, a plaintiff must demonstrate (1) the existence of the contract, (2) breach of an obligation imposed by that contract, and (3) resultant damage to the

---

[43] *Id.* ¶ 52.
[44] *Id.*
[45] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[46] *Id.*; *see Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008).

plaintiff.[47]  It is not disputed that the Work Order and MLSA are valid contracts involving the parties to this suit.[48]  The Plaintiff claims damages resulting from the Defendants' failure to meet their co-marketing,[49] revenue sharing,[50] and error resolution responsibilities[51] under the Work Order and the MLSA.[52]  I find that these pleadings sufficiently state a claim for breach of contract.

It is also worth noting at this juncture that that the MLSA contains provisions limiting Defendants' liability for a variety of claims.[53]  Defendants argue that this provision should bar certain claims or, alternatively, cap Plaintiff's damages.[54]  However, the enforceability of liability limitations is not an analysis typically appropriate at the motion to dismiss stage.[55]  I therefore defer this issue for consideration on a more developed record.

---

[47] *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009) (citation omitted).
[48] I assume for the purposes of this analysis that Net Health was a party to the MLSA.  Plaintiff contends that Defendant Net Health assumed the MLSA by purporting to assert rights under it. Compl. ¶ 14. Plaintiff further argues that Defendants waived this issue by failing to respond in their initial briefing.  Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 14, Dkt. No. 29. Defendants respond halfheartedly, with a footnote.  Reply Br. in Supp. of Defs.' Mot. to Dismiss at 17 n.3, Dkt. No. 33.
[49] Compl. ¶¶ 27-28.
[50] *Id.* ¶ 27.
[51] *Id.* ¶ 37.
[52] *Id.* ¶¶ 75-80.
[53] WO & MLSA at 15-16.
[54] Reply Br. in Supp. of Defs.' Mot. to Dismiss at 23-25, Dkt. No. 33.
[55] *Kainos Evolve, Inc. v. InTouch Techs., Inc.*, 2019 WL 7373796, at *2 (Del. Ch. Dec. 31, 2019) (citation omitted).

*B. Counts I-III: Common Law Fraud, Fraudulent Concealment, Fraudulent Inducement.*

In the September Opinion, I held that the equitable fraud claim (Count IV) would survive a motion to dismiss.[56]  I now assess the three remaining fraud-based causes of action, for common law fraud, fraudulent concealment, and fraudulent inducement, ultimately finding that they are also sufficiently pled.  My reasoning follows.

Defendants argue that each of these three claims runs afoul of economic loss doctrine, which bars a party from "bootstrap[ping] a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations."[57]  This doctrine is inapplicable.  Here, the Plaintiff is not merely taking "the simple fact of nonperformance, add[ing] a dollop of the counterparty's subjective intent not to perform, and claim[ing] fraud."[58]  Instead, it is alleged that Defendants "knowingly made false representations [with respect to] a contract on which the plaintiff justifiably relied, and then breached that contract by violating the representation(s) that were falsely made."[59]  Specifically, the Defendants purportedly concealed information about Tissue Analytics' pending sale to a

---

[56] September Opinion at *4.

[57] *Osram Sylvania Inc. v. Townsend Ventures, LLC*, 2013 WL 6199554, at *16 (Del. Ch. Nov. 19, 2013) (quoting *Narrowstep, Inc. v. Onstream Media Corp.,* 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010)).

[58] *Smash Franchise P'rs, LLC v. Kanda Hldgs., Inc.*, 2020 WL 4692287, at *16 (Del. Ch. Aug. 13, 2020) (vacated in part on other grounds).

[59] *Levy Family Inv'rs, LLC v. Oars + Alps LLC*, 2022 WL 245543, at *7 (Del. Ch. Jan. 27, 2022).

competitor of Trust Robin during the negotiation of the Work Order and MLSA.[60]

Defendants went on to make false representations of that competitor's intentions towards Plaintiff.[61] Plaintiff relied on these representations to enter and remain in a contractual relationship with Defendants.[62] Defendants then breached that contract, simultaneously violating those falsely made representations, causing Plaintiff injury. The facts pled here therefore support claims for both breach of contract and fraud.[63]

Having established that these claims do not represent impermissible "bootstrapping" attempts, I turn now to the question of whether the Amended Complaint has adequately pled the elements of each claim. I note here that, to the extent the abundance of fraud claims pled is redundant, obviously, the Plaintiff can recover for resulting damages (if any) but once. But at this pleading stage, it would be inappropriate to dismiss for redundancy.

1. Count I: Common Law Fraud

Common law fraud in Delaware requires the defendant to knowingly[64] make a false representation intended to cause the plaintiff to act (or refrain from acting), which the plaintiff subsequently relies upon to its detriment.[65] Rule 9(b) requires allegations of fraud to state the relevant circumstances with particularity, while

---

[60] Compl. ¶ 24.
[61] *Id.* ¶¶ 34-36.
[62] *Id.* ¶¶ 57, 62.
[63] *See Levy Family Inv'rs*, 2022 WL 245543, at *7.
[64] Or with requisite indifference to the truth.
[65] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 144 (Del. Ch. 2003).

12

simultaneously allowing the knowledge or intent requirement to be "averred generally[.]"[66] Here, Plaintiff pleads with particularity that Defendants knowingly made numerous misrepresentations that induced Plaintiff to remain in the partnership to its subsequent detriment.[67] This is sufficient to state a cause of action for common law fraud.

### 2. Count II: Fraudulent Concealment

Fraudulent concealment requires a plaintiff to show that its injury was caused by the defendant's deliberate concealment of a material fact with intent to induce plaintiff's reliance.[68] This cause of action also requires that the defendant acted with scienter.[69] Here, the Plaintiff alleges that Tissue Analytics concealed its negotiations with Net Health to induce Plaintiff to enter the MLSA and Work Order.[70] Tissue Analytics allegedly did so "knowing that, when the deal closed, it would seek to thwart the development of [iWound] and dedicate resources to Net Health's competing product."[71] Plaintiff relied upon Defendants' concealment and suffered damages as a result.[72] Thus, Plaintiff states a claim for fraudulent concealment.

---

[66] Ct. Ch. R. 9(b); *see also In re Swervepay Acquisition, LLC*, 2022 WL 3701723, at *7 (Del. Ch. Aug. 26, 2022)
[67] Compl. ¶¶ 34-36.
[68] *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).
[69] *Id*.
[70] Compl. ¶ 25.
[71] *Id*.
[72] *Id*. ¶ 62.

### 3. Count III: Fraudulent Inducement

"Under Delaware law, the elements of fraudulent inducement and fraud are the same."[73] Plaintiff has already stated a claim for common law fraud. The main difference with respect to the inducement claim is that the underlying facts refer to representations *prior to* the signing of the MLSA and Work Order.[74] Accordingly, the fraudulent inducement claim is also properly pled.

### C. Count VI: Tortious Interference with Contract

The elements of a cause of action for tortious interference with contract are well-established under Delaware law: (1) the existence of a contract, (2) that the defendant knew about, (3) an intentional act by defendant that is a significant factor in causing the breach of that contract, (4) without justification, (5) which causes injury.[75] As established above, the Plaintiff has pled a claim for breach of contract. The element of intent is met with a general averment at the pleadings stage.[76]

Plaintiff also alleges that Defendant Net Health knew of the contract and "encouraged Tissue Analytics to slow down development of the iWound App while placating any of Trust Robin's concerns."[77] Defendants contend that their alleged

---

[73] *In re Swervepay Acquisition, LLC*, 2022 WL 3701723, at *6 (quoting *Great Hill Equity P'rs IV, LP v. Sig Growth Equity Fund I, LLLP*, 2018 WL 631182, at *31 (Del. Ch. Dec. 3, 2018)).
[74] Compl. ¶ 65.
[75] *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1266-67 (Del. 2004) (citation omitted).
[76] Ct. Ch. R. 9(b); Compl. ¶¶ 32, 84.
[77] Compl. ¶ 32.

acts, if they occurred at all, were justified because "a parent corporation can [only] be held liable for tortiously interfering with its subsidiaries' contracts when a plaintiff proves that the parent was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises."[78] This contention ignores Plaintiff's core argument that the actions in question involved fraudulent misrepresentations, necessarily taken in bad faith, that were the proximate cause of Plaintiff's injury.[79] Further, the actions of interference are alleged to have started before the merger. Accordingly, I find that the Plaintiff has stated a claim for tortious interference with contract.

*D. Count VII: Tortious Interference with Prospective Economic Advantage*

"To survive dismissal on the claim for tortious interference with prospective economic advantage, [plaintiff] must allege: [1] the reasonable probability of a business opportunity, [2] the intentional interference by defendant with that opportunity, [3] proximate causation, and [4] damages."[80] These requirements are met by Plaintiff's allegations that: (1) it had product demonstrations scheduled with prospective customers; (2) Defendants undermined these demonstrations by

---

[78] Defs.' Opening Br. Supp. Mot. to Dismiss at 21-22 (quoting *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647, at *26 (Del. Ch. Nov. 17, 2014) (citation omitted)).
[79] Compl. ¶¶ 84-85.
[80] *Kuroda*, 971 A.2d at 886–87 (citation omitted).

sabotaging iWound's development and pitching their competing product; (3) these efforts cost Plaintiff the opportunities in question, (4) losing them money.[81]

### E. Count VIII: Unjust Enrichment

Under Delaware law, an unjust enrichment cause of action has five elements: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[82] Defendants argue for dismissal based on the axiom that a plaintiff cannot recover for unjust enrichment where a valid contract governs, since that contract is the measure of recovery.[83] At the pleading stage, however, it is appropriate to permit the claim to stand, pending development of a record on the contract claim.[84]

Plaintiff's unjust enrichment claim faces a second challenge. While the Plaintiff has successfully pled an injury, the only potential enrichment described in the Amended Complaint comes from Defendants beating iWound to market.[85]

---

[81] Compl. ¶¶ 88-89.

[82] *Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 341 (Del. Ch. 2022) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).

[83] Defs.' Opening Br. Supp. Mot. to Dismiss at 15-16 (citing *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58–59 (Del. Ch. 2012)).

[84] *LVI Grp. Invs., LLC v. NCM Grp. Holdings*, LLC, 2018 WL 1559936, at *16 (Del. Ch. Mar. 28, 2018) (finding that unjust enrichment and contract-based claims can coexist when the contract in question was one component of a larger strategy of misrepresentation and bad faith).

[85] *See* Compl. ¶¶ 94, 96; Plaintiff also alleges that Defendants provided a quote to a potential iWound customer. Compl. ¶ 45. However, it is not alleged that Defendants received any money in connection with that bid.

Notably absent from the Amended Complaint is any description of the resulting benefits Defendants have enjoyed. However, because I find it plausible that the Defendants benefited financially in a way cognizable in equity, I cannot dismiss the claim at this stage.

*F. Count IX: Civil Conspiracy*

"Under Delaware law, to state a claim for civil conspiracy, a plaintiff must plead facts supporting (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff."[86] It is also important to note that "[c]ivil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong."[87] Plaintiff's successful pleading of the fraud and tort claims outlined above supports a claim against Defendants for civil conspiracy at this stage, limited, obviously, to the time before the acquisition of Tissue Analytics by Net Health.

*G. Count X: Breach of Implied Covenant of Good Faith & Fair Dealing*

"The implied covenant of good faith and fair dealing inheres in every contract[,]" requiring a party to refrain from unreasonable conduct that prevents its counterparty from "receiving the fruits of the bargain."[88] A cause of action for

---

[86] *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006) (citing *Nicolet, Inc.*, 525 A.2d at 149–50).
[87] *Kuroda*, 971 A.2d at 892.
[88] *Id*. at 888 (internal quotations omitted).

17

breach of the implied covenant requires plaintiff to show that it was injured by defendant's breach of a specific implied contractual obligation.[89] Here, Plaintiff pleads that its contracts with Defendants did not explicitly require Defendants to refrain from undermining iWound and diverting resources to their own competing project, as such a requirement would have been too obvious to expressly contract for.[90]

It is a rare complaint that pleads a cognizable claim based on the implied covenant. This, I find, is one such instance, at least on the plaintiff-friendly inferences enjoyed by Trust Robin here. Defendants' alleged breach of the implied obligation not to use the contractual relationship as a tool to loot and damage the Plaintiff, and Plaintiff's resulting injury, have already been discussed at length. Though recovery, if any is warranted, will likely come through other channels, I find that, at the current stage, the Amended Complaint states a claim for breach of the implied covenant of good faith and fair dealing.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss under 12(b)(6) is DENIED. An Order is attached.

---

[89] *Id.*
[90] Compl. ¶ 104.

18

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

TRUST ROBIN, INC., )
)
Plaintiff, )
)
v. ) C.A. No. 2021-0806-SG
)
TISSUE ANALYTICS, INC. and NET )
HEALTH SYSTEMS INC., )
)
Defendants. )

## **ORDER**

For the reasons explained in this Court's Memorandum Opinion of

December 2, 2022, Defendants' Motion to Dismiss the Amended Complaint is

DENIED.

IT IS SO ORDERED.

/s/ Sam Glasscock III
Vice Chancellor