# THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| JOEL GETZLER, DANIEL GETZLER, DANIEL GINDEA, NEIL MARKS & STEVEN SALES, TRUSTEE OF THE STEVEN SALES RETIREMENT PLAN, Plaintiffs, | ) ) ) ) ) ) ) | |
| v. | ) ) | C.A. NO. N23C-02-086 DJB |
| RIVER RUN FOODS (DE), LLC, a Delaware limited liability company, and FRED LANGER, Defendants, | ) ) ) ) ) ) | |

Argued: March 13, 2024
Decided: July 1, 2024

*Upon Defendant's Motion for Summary Judgment* – GRANTED
*Upon Plaintiffs' Cross-Motion for Summary Judgment and Defendant's Motion to Strike Plaintiffs' Cross-Motion* – DENIED

## MEMORANDUM OPINION

Andrew L. Cole, Esquire, Stacy L. Newman, Esquire, Michael E. Fitzpatrick, Esquire, and Nathaniel J. Klepser, Esquire of COLE SCHOTZ PC, Wilmington, Delaware, and J. Michael Pardoe, Esquire, admitted *pro hac vice*, of COLE SCHOTZ PC, Baltimore, Maryland, *Attorneys for Plaintiffs*.

Marc Casarino, Esquire, and Katie Barksdale, Esquire, of KENNEDYS CMK LLP, Wilmington, Delaware, *Attorneys for Defendants*.

**BRENNAN, J.**

## I.    INTRODUCTION

This civil action alleges one count of fraud by Plaintiffs following a four hundred thousand dollar ($400,000.00) investment ("the investment") in Defendant River Run Foods, LLC ("River Run") in October of 2021.  This Complaint was filed on February 10, 2023.  Plaintiffs' complaint is against both River Run and Defendant Fred Langer ("Langer," collectively "Defendants"), the Chief Operating Officer of River Run.[1]  Defendant River Run is a company that provides food manufacturing and packaging services.[2]  Langer worked for Plaintiff Joel Getzler ("Getzler"), who owns a consulting firm which provides guidance to financially troubled businesses. River Run was a former client of Getzler's firm prior to the investment.

## II.    PROCEDURAL HISTORY

Following the close of discovery, Defendants moved for summary judgment ("Defendants' Motion") on January 5, 2024, in accordance with the Trial Scheduling Order set for this case.[3]  On February 5, 2024, Plaintiffs filed their opposition to Defendants' Motion and simultaneously filed a Cross-Motion for Summary Judgment ("Cross-Motion").[4] Defendants moved to strike, as untimely, the Cross-Motion on February 7, 2024.[5]  That same day, Plaintiffs filed their opposition to the

---

[1]    Complaint, D.I. 1.
[2]    D.I. 1, at ¶ 17.
[3]    Defendants' Motion for Summary Judgment. D.I. 42.
[4]    D.I. 44-46.
[5]    D.I. 48.

Motion to Strike.[6]  On February 12, 2024, Defendants replied to the motions filed by Plaintiffs.[7] Oral argument was held March 13, 2024.[8]  Following review of the filings, arguments of counsel, the entire record in the case, and the applicable legal authority, for the reasons stated below, Defendants' Motion to Strike and the Plaintiffs' Cross-Motion for Summary Judgment are **DENIED**; Defendants' Motion for Summary Judgment is **GRANTED**.

### III.   FACTUAL BACKGROUND

Getzler's consulting firm, non-party Getzler Henrich & Associates, works with financially troubled companies; Getzler is the co-chairman of his firm.[9]  River Run was a client of Getzler Henrich until March 2018.[10]  In 2019, Langer, who previously worked at Getzler Henrich, and a group of investors, purchased 80% of River Run.[11] Langer is currently the Chief Operating Officer of River Run.[12]

Seeking investors, Langer, on behalf of River Run, sent Getzler a written document offering Series A Preferred Stock in River Run ("Prospectus") on August 31, 2021.  Getzler forwarded the document to Plaintiffs Daniel Getzler, Daniel

---

[6]     D.I. 48, 49.
[7]     D.I. 52.
[8]     D.I. 53.
[9]     D.I. 42, at 3.
[10]    *Id.* at 4
[11]    *Id*. Langer and Getzler have known each other for forty years.
[12]    *Id.*

Ginger, Neil Marks and Steven Sales (collectively "Plaintiffs").[13] On September 3, 2021, Langer provided Getzler with projected River Run financials ("Projections") forecasting 2021 sales of $23,620,601.00 and Earnings Before Interest, Taxes, and Amortization ("EBITA") of -$590,747.00.[14] River Run's actual 2021 sales were $10,751,749.00,[15] and EBITA was -$5,360,633.00.[16] The Projections forecasted sales for September 2021 as $4,289,165.00, however, actual sales were $947,208.00.[17]

In October 2021, Plaintiffs invested $400,000.00, at $200.00 per unit, in River Run.[18] Per Plaintiffs, Defendants' assertions that River Run had exclusive rights to the Tetra Pak Recart packaging system,[19] and River Run's proposed new facility with eight (8) Tetra Pak lines were the impetus to the investment.[20] However, during an

---

[13] D.I. 1, at ¶ 20.

[14] D.I. 42, Ex. B, at 24:11-25:12, *see also* Ex. E; Plaintiff's Complaint erroneously alleges the EBITA figures in the positive and makes arguments of fraud on its face based upon the positive EBITA. However, it is clarified in the depositions taken, specifically of Langer, that the EBITA figures are to be negative. *See* D.I. 42, p. 19, fn. 73.

[15] D.I. 1, at ¶ 28; D.I. 7, at ¶ 28.

[16] *Id.* at ¶ 29.

[17] *Id.* at ¶ 30.

[18] Joel Getzler invested $250,000.00; Daniel Getzler invested $10,000.00; Daniel Ginda invested $25,000.00; Neil Marks invested $15,000.00; Steven Sales, for Sales Retirement Plan invested $100,000.00. D.I. 1, at ¶¶ 36-40.

[19] D.I. 1, at ¶ 22.

[20] *Id.* at ¶ 32. Tetra Pak is a "food packaging company that has developed a proprietary carton packaging technology for food products that is touted as superior in many ways to traditional food packaging using cans, bottles and the like." *Id.* at ¶ 18.

investor call on December 19, 2022, it was revealed that River Run and Tetra Pak did not have a formal exclusivity agreement, but rather River Run was attempting to obtain a two-year exclusivity agreement.[21] Additionally, Plaintiffs state that River Run's "most recent capital raise" has a price of just $5.00 per unit, a vast difference from the $200.00 per unit price paid by Plaintiffs.[22]

## IV. ARGUMENT

Defendants moved for summary judgment arguing the record does not support Plaintiffs' allegations that false statements were made.[23] Alternatively, Defendants claim any alleged misrepresentations cannot form the basis for a fraud claim, as Plaintiffs failed to do their due diligence before investing in River Run, barring recovery.[24] Defendants argue the Tetra Pak exclusivity representation included on the Prospectus was true, as River Run was the only co-packer in the Northeast.[25] Defendants argue the onus is upon Plaintiff for having failed to inquire as to the duration of "ongoing" and the scope of "Northeast" as stated in the Prospectus.[26]

---

[21] *Id.* at ¶ 24.
[22] D.I. 1 at ¶ 43, D.I. 7 at ¶ 43.
[23] D.I. 42, at 7.
[24] *Id.*
[25] *Id.* at 11-12.
[26] *Id.* at 13. Plaintiffs did not ask to see a contract or ask for details regarding the River Run and Tetra Pak relationship. *Id.* at 14.

Defendants argue that River Run had every intention of meeting the numbers in the Projections when it was drafted and presented to Plaintiffs.[27] According to Defendants, the Projections "[p]repared on June 8, 2021" were "based on reasonable assumptions regarding River Run's future performance and anticipated new customers and contracts."[28] However, two unforeseen and unexpected obstacles prevented River Run from reaching the anticipated sales figures: 1) a projected million dollar sales contract with B&G Foods fell through in September 2021, when union negotiations disrupted the B&G's facility and; 2) mechanical issues with the Tetra Pak line in August and September 2021 prevented River Run from having met its expected sales for a "Mizkan Double Cheddar" deal, as it could not produce the requested amount of product.[29] With respect to each unexpected incident, Defendants claim discussions with B&G Foods continued after September 2021, and that Tetra Pak technicians worked on the mechanical issues to attempt to correct the ongoing failures.[30]

Finally, Defendants argue River Run intended to build a new facility complete with the eight (8) Tetra Pak lines, as represented in the Prospectus.[31] In support, Defendants produced documents in the record showing that River Run had

---

[27]     *Id*
[28]     *Id.* at 18.
[29]     *Id.* at 22.
[30]     *Id.* at 23-24.
[31]     *Id.*

6

completed detailed designs for a new facility and argue that the delay in construction was due to the developer's – and not River Run's – lack of performance.[32]

Plaintiffs do not raise any independent claims in support of their Cross-Motion for Summary Judgment. Rather, in response to Defendants' motion, Plaintiffs argue the only reasonable meaning of "ongoing exclusivity" from the Prospectus is "that River Run would be the only co-packer with authorization to use Tetra Pak in the Northeast, to the exclusion of all other co-packers (i.e., pursuant to an agreement)."[33] In support of their argument, Plaintiffs point to a "slide deck" Langer presented to future investors in November 2021, which represented that River Run had an "exclusive Tetra Pak relationship."[34] Plaintiffs, acknowledging this was after the investment, argue the fact that Langer continued to state there was an exclusive Tetra Pak relationship shows the representation made to them earlier in the year was false, or in the least, was made with "reckless indifference to the truth." Plaintiffs argue the "exclusivity" representation induced them to invest in River Run.[35] Moreover, Plaintiffs argue Langer and Getzler have known each other for over 40 years and Getzler "absolutely trusted [Langer]," which justified Plaintiffs' reliance on the

---

32      *Id.* at 25. D.I. 42, Ex. M.
33      D.I. 44 at 17.
34      *Id.* at 18-19.
35      *Id.* at 20.

"exclusivity" representation without further research into River Run.[36] Plaintiffs seek recission for the alleged fraudulent inducement.[37]

Next, Plaintiffs argue the "sheer difference between the numbers projected, and [River Run's] actual [sales] numbers achieved" evidences a lack of good faith in the numbers listed in the Projections.[38] Plaintiffs contend the potential increase in sales from B&G Foods and Mizkan Better Cheddar was based upon conversations and not actual contracts or purchase orders.[39] As such, Plaintiffs argue Defendants represented "unrealistic financial achievements" in its Projections, which fraudulently induced Plaintiffs to invest.[40]

Last, Plaintiffs claim Defendants fraudulently represented that River Run was to begin construction on a new facility in 2021, with expected completion by 2023.[41] In support, Plaintiffs point to the fact that at the time of the investment: 1) the design plans were not completed, and 2) Defendants were aware that the developer had not

---

[36] *Id.* at 22.
[37] *Id.* at 24.
[38] *Id.* at 27. The difference between projected and actual sales was approximately $16.5 million in 2021; and in 2022 the difference was approximately $40 million.
[39] *Id.* at 28.
[40] *Id.*
[41] *Id.* at 29.

yet secured financing for the project.[42] In conjunction with this and the above claims, Plaintiffs argue they are entitled to summary judgment and recission of investment.[43]

## V. STANDARD OF REVIEW

When reviewing a motion for summary judgment under Rule 56, the Court must determine whether any genuine issues of material fact exist.[44] The moving party bears the burden of showing that there are no genuine issues of material fact to be entitled to judgment as a matter of law.[45] The Court will not grant summary judgment if it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate.[46] In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the non-moving party.[47]

The standard for summary judgment is not altered when the parties have filed cross-motions for summary judgment.[48] Cross-motions for summary judgment are

---

[42] *Id.*

[43] The Court may grant summary judgment *sua sponte*. *See Stroud v. Grace*, 606 A.2d 75 (Del. 1992). Essentially, there is no prejudice to Defendants, as the Court and may grant summary judgment in favor of Plaintiffs based on Plaintiff's opposition, without Plaintiffs' filing a cross-motion.

[44] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Ct. Oct. 28, 2020).

[45] *Id.*

[46] *Legion Partners Asset Mgmt., LLC v. Underwriters at Lloyds London*, 2021 WL 6621168, at *6 (Del. Super. Ct. Sept. 30, 2021).

[47] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. Ct. Feb. 20, 2013).

[48] *Legion*, 2021 WL 6622168, at *6.

9

not "*per se*" concessions that no genuine issue of material fact exists.[49] "But, where cross-motions for summary judgment are filed and neither party argues the existence of a genuine issue of material fact, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the [submitted record]."[50] That is the case here.

## VI. DISCUSSION

"Delaware law does not distinguish between a claim for fraudulent inducement and a claim for common law fraud."[51] Common law fraud requires: 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.[52]

---

[49] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

[50] *Radulski*, 2020 WL 8676027, at *4 (internal quotation marks omitted).

[51] *In re P3 Health Grp. Holdings, LLC*, 2022 WL 15035833 (Del. Ch. Oct. 26, 2022), *as corrected* (Oct. 28, 2022).

[52] *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983).

## A. PLAINTIFFS FAIL TO SHOW MISREPRESENTATION

Under the first prong of this analysis, a defendant must be shown to have had a culpable state of mind, intended to induce reliance.[53] A "culpable state of mind" is beyond mere negligence.  In a fraud action, a culpable state of mind requires some affirmative evil nature, evidence of dishonestly, or the intent to cheat or deceive one party to a transaction.[54]  "Generally, there is no duty to disclose a material fact or opinion."[55] "However, where one actively conceals a material fact, such person is liable for damages caused by such conduct."[56]

### 1.    "Ongoing Exclusivity" with Tetra Pak

The Prospectus Langer provided Getzler described River Run's business, opportunities, financial projections, and terms of the Series A Preferred Units.[57] The Prospectus included the following language:

> RRF is a northeast USA food co-manufacturer, with an established reputation producing premium pasta sauces and related products. RRF is executing on the strategy to be the co-manufacturing source for the way consumers are buying sauces, soups, vegetables and toppings in the 21st century. **In partnership with Tetra Pak (the largest privately held packaging company in the world with manufacturing and co-packing sites around the globe) the Company is deploying Tetra Pak's cost-effective**

[53]    *Arwood*, 2022 WL 705841, at *20, The misrepresentation must be made knowingly, intentionally, or with reckless indifference to the truth. *Id.*

[54]    37 Am. Jur. 2d *Fraud and Deceit* § 3 (Feb. 2022 Update).

[55]    *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).

[56]    *Id.*

[57]    *Id.*

**and environmentally-friendlier Recart® packaging technology (shelf-stable cartons that replace cans) with <u>ongoing exclusivity</u> as the only copacker in the Northeast.** The Tetra Pak Recart® technology allows for shelf stable foods to be packaged in the most environmentally sustainable package available. The Tetra Pak package has the added appeal of being the best option for E-Commerce (Amazon and WalMart E-Commerce as an example) as it is significantly more shipper friendly than glass, cans or pouches. The partnership driven by RRF's unique experience and capabilities and Tetra Pak's global reach have already enabled RRF to capture: Ragu, Bertolli, Green Giant, Cento, Zenb, Kettle & Fire, among other National and International brands.[58]

Plaintiffs allege the words "ongoing exclusivity" is a misrepresentation that induced them to invest in River Run. Further, Plaintiffs allege Langer orally informed Getzler that River Run and Tetra Pak had a contract regarding their exclusivity.[59] In response, Defendants assert River Run was the only Tetra Pak co-packer in the Northeast when stated and remains so this day.[60] In support, Defendants provided two letters from Tetra Pak employees that state:

> Provided that an order is placed and confirmed for a TPR 1 within sixty (60) days of the date of this letter, **Tetra Pak Inc confirms that it will not commission any new Tetra Recart® TPR 1 lines in the Northeastern1 region of the United States**, with new contract manufacturing companies, for the shelf stable sauce category in Tetra Recart®, **for a period of two years from the date of this letter**.[61]

---

[58]    *Id.* (emphasis added).
[59]    D.I. 44, at 22.
[60]    D.I. 42, at 12.
[61]    D.I. 42, Ex. J (emphasis added).

…

>Provided that an order is placed and confirmed for the first TPR 1 within sixty (60) days of the date of this letter, **Tetra Pak Inc confirms that it will not enable another contract manufacturer for the shelf stable sauce category in the Tetra Recart® as long as River Run Foods continues to keep up with demand**.[62]

Plaintiffs allege Langer orally informed Getzler that there was a written exclusivity agreement between River Run and Tetra Pak.[63]  Even if the record supported this allegation, Getzler, a sophisticated businessperson, could have inquired about the agreement.  It is not lost on the Court that Getzler's area of expertise is financial consulting for companies in peril.  Under this analysis, and in this scenario, it is insufficient for a plaintiff to rely upon blanket trust of a known associate when engaging in such transactions.[64]

The record does reflect Defendants effectively had, and still have, exclusive Tetra Pak rights at the time the Prospectus was presented to Plaintiffs.  The emails document an offer of exclusive rights to River Run for Tetra Pak.  Therefore, the record does not support a finding of the required culpability with this statement.

### 2. Representation of River Run's New Facility Construction

The Prospectus also included River Run's new facility goal:

---

[62]  D.I. 42, Ex. K (emphasis added).

[63]  D.I. 1, ¶ 22.

[64]  *C.f. Esso Standard Oil Co. v. Cunningham*, A.2d 380, 383, (Del. Ch. 1955), *aff'd,* 118 A.2d 611 (Del. 1955).

In 2023, it is RRF's goal to **move into a new 280,000 square-foot manufacturing plant** in Allenwood, PA. The expansion will allow RRF to increase its Tetra Pak Recart® packaging capacity to over 400 million units per year. RRF already has customer requirements that will exceed future capacity. RRF intends to raise additional capital to finance the expansion.[65]

Plaintiffs contend the above language was a misrepresentation which induced them to invest in River Run. Without support, Plaintiffs assert that "the evidence shows that River Run knew or should have known that it was not going to construct its new facility when promised."[66] The record shows the contrary. Defendants presented six different documents to establish the representation regarding the new plant was true, when stated.[67] The documents include "CAD" drawings, preliminary construction schedule, a purchase agreement, and detailed design proposal.[68] The record indicates River Run was actively engaged in discussions and efforts to build a new facility and does not support Plaintiffs claim of misrepresentation. The language in the Prospectus states, "it is [River Run's] *goal* to move into a new . . . manufacturing plant…". The only evidence in the record on this area reflect Defendants' actions were in line with their representation.

---

[65]    D.I. 42, Ex. D (emphasis added).
[66]    D.I. 44, at 29.
[67]    *See* D.I. 42, Exs. M, N, O, P, Q, R.
[68]    *Id*.

### 3. Fraud Allegations in The Projections

Plaintiffs allege the Projections given to them by Defendants were fraudulent given the difference between the projected numbers and actual numbers.[69] In defense of this claim, Langer provided testimony explaining why there was a significant difference between the two sets of numbers: River Run expected significant sales growth from B&G Foods and Mizkan Double Cheddar.[70]

Sales projections are forecasts of future business and those "predictions about the future cannot give rise to actionable common law fraud."[71] "Opinions and statements as to probable future results are not generally fraudulent even though they relate to material matters. . ."[72] Plaintiffs argue Langer could not have relied on the above expectations because there was no written agreement with either company.[73] Yet Plaintiffs offer no separate evidence, nor does the record, as presented, show the numbers were either fraudulently created or that the Projections amount to fraud.

---

[69]     D.I. 44, at 27.

[70] D.I. 42, Ex. B, pg. 27-35.

[71] *Great Lakes Chem. Corp. v. Pharmacia Corp.,* 788 A.2d 544, 554 (Del. Ch. 2001).

[72] *Esso Standard Oil Co. v. Cunningham*, A.2d 380, 383, (Del. Ch. 1955), *aff'd,* 118 A.2d 611 (Del. 1955). *See also WyPie Invs., LLC v. Homschek*, 2018 WL 1581981 (Del. Super. Ct. Mar. 28, 2018) (stating that it is well settled in Delaware that predictions about the future and expressions of opinion cannot give rise to actionable common law fraud.).

[73] D.I. 44, at 28.

**B. PLAINTIFFS FAIL TO SHOW JUSTIFIABLE RELIANCE ON ALLEGED MISREPRESENTATIONS**

Justifiable reliance is measured by the plaintiff's knowledge and experience and the relationship between the parties.[74] "A plaintiff's sophistication may affect a court's judgments about what dangers were fairly considered obvious." However, "a plaintiff's diligence efforts can be evidence that her reliance on a false representation was reasonable because she made efforts to verify the representation and discovered no reason to doubt its truth."[75]

**1. Justifiable Reliance in Connection With The Prospectus**

The Prospectus included the following disclaimer:

> This presentation is provided to you on the understanding that, as a **sophisticated investor, you will understand and accept its inherent limitations**, will not rely on it in making any decision to invest with [River Run] and will use it only for the purpose of preliminary discussions with [River Run]. **In making any investment decision, you should conduct, and must rely on, your own investigation and analysis of the data and descriptions set forth in this presentation, including the merits and risks involved**.[76]

The record does not provide any insight into what, if any, due diligence Plaintiffs conducted. As noted above, Getzler was a sophisticated investor in the

---

[74]  *Arwood v. AW Site Servs., LLC.*, 2022 WL 705841, at *23 (Del. Ch. Mar. 9, 2022).

[75]  *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *33 (Del. Ch. Dec. 3, 2018).

[76]  D.I. 42, Ex. D, pg. 4 (emphasis added).

field of financially troubled companies. In addition, Getzler had personal experience with River Run, as a former financially troubled client of his company. Getzler has been working with financially distressed companies since 1990 and prior to that he "look[ed] at deals" for Midland Ventures to make investments.[77] Getzler cannot claim, nor does the record reflect, that Plaintiffs were wholly unaware of or incapable of inquiring into River Run's financial situation and business operations.

With this fact set, Plaintiffs cannot secure redress for fraud. The record reflects that Plaintiffs relied on Getzler's information and expertise, but provides no insight to any due diligence conducted by any Plaintiff.[78]

### 2. Justifiable Reliance in Connection with the Projections

Plaintiffs fail to show justifiable reliance when Defendants prepared and presented the Prospectus or Projections. In September 2021, Plaintiffs received the Projections prepared on June 8, 2021. Plaintiffs point to the significant difference in the projected versus actual numbers for September, 2021, yet their investment wasn't until October, 2021. Therefore, Plaintiffs had could have requested and reviewed updated financials. The record does not reflect that any Plaintiff asked for or made any inquiry with respect to the updated, actual financials. An experienced

---

[77] D.I. 42, Ex. C, pg. 14-15.

[78] Only Getzler and Marks had conversations with Langer and Langer provided the documents to Getzler. D.I. 42, Ex. E at 14:16-15:1; Ex. I, at 16:19-17:19, Ex. G, at 13:4-18.

businessman with personal knowledge of a company's troubled financial past, cannot establish fraudulent inducement where no due diligence was performed.

Langer provided detailed testimony regarding the Projections and the difference in numbers. Langer's testimony does not show the *scienter* required to bring a successful fraud claim. To the contrary, the record indicates unforeseen Union issues at B&G Foods and the Tetra Pak mechanical issues that affected production of Mizkan Double Cheddar, which prevented River Run from meeting its projection. The evidence regarding the Projections supports Defendants claims and fails to show the Projections were fraudulently created to induce investors. While River Run may have either been poorly run or the victim of circumstance, the record does not establish, even when looking at it in the light most favorable to Plaintiffs, a claim for fraud.

## VII. CONCLUSION

Plaintiffs made an investment that did not provide the returns they expected, but the law cannot provide the redress sought. Plaintiffs cannot establish false representations were made, and even if made, Plaintiffs cannot show justifiable reliance on any alleged misrepresentation.

Therefore, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Cross-Motion for Summary Judgment is **DENIED**.  In the interests of justice, the Motion to Strike Plaintiff's Cross-Motion is **DENIED**.

_____
**Danielle J. Brennan, Judge**