**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| DEUTSCHE BANK AG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 2017-0822-SG |
| | ) |
| DEVON PARK BIOVENTURES, L.P., | ) |
| DEVON PARK ASSOCIATES, L.P., | ) |
| SEBASTIAN HOLDINGS, INC., and | ) |
| UNIVERSAL LOGISTIC MATTERS, | ) |
| S.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| DEVON PARK BIOVENTURES, L.P., | ) |
| | ) |
| Counterclaim | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEUTSCHE BANK AG, | ) |
| | ) |
| Counterclaim | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| SEBASTIAN HOLDINGS, INC. and | ) |
| UNIVERSAL LOGISTIC MATTERS, | ) |
| S.A., | ) |
| | ) |
| Cross-Claim | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Date Submitted: October 16, 2024
Date Decided:  January 29, 2025

Stephen C. Norman and Aaron R. Sims, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: David G. Januszewski, Sheila C. Ramesh, and Sesi V. Garimella, of CAHILL GORDON & REINDEL LLP, New York, New York, *Attorneys for Plaintiff and Counterclaim Defendant Deutsche Bank AG.*

James M. Yoch, Jr. and Kevin P. Rickert, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Kevin C. Maclay, Todd E. Phillips, Quincy M. Crawford, and Nathaniel R. Miller, of CAPLIN & DRYSDALE, CHARTERED, Washington, DC, *Attorneys for Defendant, Counterclaim Plaintiff, and Cross-Claim Plaintiff Devon Park Bioventures, L.P. and Defendant Devon Park Associates, L.P.*

William M. Kelleher and Phillip A. Giordano, of GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware, *Attorneys for Defendant Sebastian Holdings, Inc.*

K. Tyler O'Connell, Albert J. Carroll, R. Eric Hacker, and Samuel E. Bashman, of MORRIS JAMES LLP, Wilmington, Delaware, *Attorneys for Defendant CPR Management, S.A., f.k.a. Universal Logistic Matters, S.A.*

**GLASSCOCK, Vice Chancellor (retired, sitting by Supr. Ct. Order 1, 2025 (January 8, 2025))**

This is the latest installment in this long-running Delaware action in which Plaintiff Deutsche Bank AG ("Deutsche") seeks to collect a judgment against Defendant Sebastian Holdings, Inc. ("Sebastian"). That very substantial judgment was awarded by an English court more than a decade ago. In the interim, Sebastian and its owner, Alexander Vik, have led Deutsche on a merry chase through several jurisdictions in an attempt to satisfy the judgment. This action represents one such effort. Briefly, Sebastian held, at the time of the judgment, a limited partnership interest in Defendant Devon Park Bioventures, L.P. ("Devon LP"), a partnership created in Delaware and doing business in Pennsylvania. Sebastian purported to transfer this interest to Defendant CPR Management, S.A. ("CPR"), an entity supposedly controlled by Alexander Vik's father. The gravamen of this action involves Plaintiff's contention that the transfer was fraudulent, designed to avoid satisfaction of Plaintiff's judgment against Sebastian, from which fraudulent transfer various remedies, per Plaintiff, flow.

I never reached these substantive issues, because I determined I lacked jurisdiction over Sebastian and CPR, both foreign entities.

Remaining is Plaintiff's claim that the Defendant entities over which jurisdiction *does* exist, Devon LP and its general partner, are implicated in, and liable to Plaintiff for, their role in the transfer of the partnership interest from Sebastian to CPR, and for distributions made to CPR, under theories of common-law fraud and

civil conspiracy. Currently before me is the motion to dismiss of Devon LP and Devon Park Associates, L.P. ("Devon GP," together with Devon LP, the "Devon Park Entities"), for failure to state a claim.

It was a truism impressed upon me in the long-ago world of Twentieth Century litigation that a money judgment was only a part of vindication of a successful plaintiff's claim, and that collection of the judgment could be the steeper half of the effort. Still true, as the litigation arising from the original judgment here attests. I am sympathetic to Plaintiff's frustration as it tries to salvage, from litigation in this jurisdiction, some type of satisfaction of that judgment against the parties over whom jurisdiction may be established. Even given the plaintiff-friendly inferences obtaining, however, I cannot find that Deutsche has stated a claim against the Devon Park Entities. Accordingly, the Devon Park Entities' motion to dismiss is granted. My reasons are laid out, below.

# I. BACKGROUND [1]

### A.    *The Parties and Relevant Non-Parties*

Plaintiff and Counterclaim Defendant Deutsche is a corporation organized under the laws of Germany.[2]  Deutsche maintains a branch office in New York, New York, and has consented to personal jurisdiction.[3]

Defendant Devon LP is a Delaware limited partnership with its principal office in Pennsylvania.[4]  Devon LP has also filed counterclaims and cross-claims for interpleader in this action.[5]

Defendant Devon GP is a Delaware limited partnership and the general partner of Devon LP.[6]

Defendant Sebastian is a corporation organized under the laws of the Turks and Caicos Islands.[7]  It is an "exempted company," which cannot do business in the Turks and Caicos Islands beyond a *de minimis* level.[8]

---

[1] This memorandum opinion includes a brief recitation of facts, which are drawn from the Plaintiff's Verified Amended Complaint, and incorporates only those necessary to my analysis. Dkt. No. 326 ("Am. Compl.").  A fuller explanation of the facts is laid out in *Deutsche Bank AG v. Devon Park Bioventures, L.P.*, 2021 WL 2711472 (Del. Ch. June 30, 2021) ("*Deutsche Bank I*") and *Deutsche Bank AG v. Devon Park Bioventures, L.P.*, 2023 WL 7159921 (Del. Ch. Oct. 31, 2023) ("*Deutsche Bank II*").
[2] Am. Compl. ¶ 8.
[3] *See id.*
[4] *Id.* ¶ 9.
[5] *See* Def. Devon Park Bioventures, L.P.'s Answer to the Verified Compl. and Verified Countercls.–Cross-Cls. for Interpleader, Dkt. No. 15 ("Interpleader").
[6] Am. Compl. ¶¶ 10, 20.
[7] *Id.* ¶ 11.
[8] *Id.*

Defendant CPR is a corporation organized under the laws of Panama.[9] CPR formally changed its name from Universal Logistic Matters, S.A. to CPR Management, S.A. in 2015.[10]

Non-party Alexander Vik ("Vik Jr.") is a Norwegian billionaire.[11] He was, at all relevant times, the sole shareholder and director of Defendant Sebastian.[12]

Non-party Per Johansson was, at relevant times, an agent, consultant, and/or employee of Sebastian and/or Vik Jr.[13] He was also an agent, consultant, and/or employee of CPR.[14]

Non-party VBI Corporation ("VBI") is a corporation organized under the laws of the Turks and Caicos Islands whose sole shareholder is, and was at all relevant times, Alexander Vik, Sr. ("Vik Sr."), Vik Jr.'s father.[15] VBI is an is an "exempted company," which cannot do business in the Turks and Caicos Islands beyond a *de minimis* level.[16]

---

[9] *Id.* ¶ 12.
[10] *Id.* CPR appears to have been formerly known as both Universal Logistic Matters, S.A. and Universal Logistics Matters, S.A. *Id.* ¶ 5.
[11] *Id.* ¶¶ 2, 13.
[12] *Id.* ¶ 11.
[13] *Id.* ¶ 15.
[14] *Id.*
[15] *Id.* ¶ 14.
[16] *Id.*

## B. *Factual Background*

### 1. Deutsche Prevails in an English Legal Action Against Sebastian

In 2008, Sebastian failed to satisfy margin calls Deutsche made to recoup losses it incurred trading on Sebastian's behalf.[17] Deutsche filed suit against Sebastian in an English court on January 21, 2009 (the "English Action") seeking amounts owed in connection with those unpaid margin calls, as well as interest and costs.[18] Deutsche prevailed in that action, obtaining a judgment for $235,646,345 on November 8, 2013 ("English Judgment").[19] Sebastian has not paid Deutsche any portion of the amount due under the English Judgment.[20] Deutsche seeks to satisfy the English Judgment from Sebastian's remaining assets—in particular a 23% limited partnership interest in Devon LP ("the Devon Interest").[21]

### 2. The Devon Interest Prior to the Assignment Agreement in 2014

Neither Devon LP's business nor the date on which Sebastian became a limited partner of Devon LP is disclosed in the Amended Complaint. Devon LP, Sebastian and non-party JP Morgan Chase Bank, N.A. ("JP Morgan") entered into an escrow agreement dated July 13, 2012, whereby Sebastian deposited funds into

---

[17] *Id.* ¶¶ 35–36.
[18] *Id.* ¶¶ 3, 44. The English Action is captioned *Deutsche Bank AG v. Sebastian Holdings, Inc.*, Claim No. 2009 Folio 83. *Id.* ¶ 3.
[19] *Id.* ¶¶ 1, 3, 49–51.
[20] *See id.* ¶ 53.
[21] *Id.* ¶¶ 4, 228–29.

5

an escrow account (with JP Morgan as escrow agent) to cover future capital calls made by Devon LP.[22]

On or around September 26, 2012, during the pendency of the English Action and another related action, and unbeknownst to Deutsche, Sebastian purported to transfer the majority of its remaining non-cash assets to non-party VBI, including the Devon Interest.[23] The transfer of the Devon Interest was never approved by Devon LP's general partner, Devon GP, as would have been required by Devon LP's Partnership Agreement.[24] Presumably, this attempted transfer was not effective.

### 3. Sebastian Purports to Assign the Devon Interest to CPR

On August 29, 2014, Sebastian purported to transfer the Devon Interest to CPR via an Assignment and Assumption Agreement (the "Assignment Agreement").[25] Deutsche did not learn of this transfer until 2016, in connection with another lawsuit seeking to collect amounts owed under the English Judgment.[26] The Assignment Agreement does not include any information on what CPR provided to

---

[22] *Id.* ¶¶ 16, 149. Deutsche defines "Devon Park" in the Amended Complaint as Devon GP together with Devon LP, and alleges that "Devon Park" entered into this escrow agreement. *Id.* ¶¶ 6, 16. However, only Devon LP is a party to the escrow agreement. Ex. B. to Am. Compl. (the "Escrow Agreement"). Additionally, the Amended Complaint states the amounts deposited in the escrow account were "intended to cover future capital calls made by Devon Park." Am. Compl. ¶ 6. I assume that Deutsche intended to reference Devon LP, not both Devon LP and Devon GP, as it is not alleged that Sebastian was a limited partner of Devon GP.

[23] *Id.* ¶¶ 83–85, 90.

[24] *Id.* ¶¶ 90–94, 102–03.

[25] *Id.* ¶¶ 133, 241; *see* Ex. D to Am. Compl. ("Assignment Agreement").

[26] Am. Compl. ¶¶ 112–13.

6

Sebastian, if anything, in consideration for the assignment and no contemporaneous documentation evidences what consideration CPR provided to Sebastian.[27]

In the Assignment Agreement, CPR represented that the Devon Interest was being acquired for CPR's own account, that no one other than CPR has any interest or right to acquire the Devon Interest, and that CPR was not solely formed for the purpose of making an investment in Devon LP.[28] Sebastian also made representations in the Assignment Agreement, including, among others, that:

> [the transfer to CPR would not] result in the creation of any pledge, claim, security interest, encumbrance, charge, restriction, claim of fraudulent transfer or limitation of any kind, whether arising by agreement, operation of law or otherwise ("Lien") upon the [Devon] Interest

and

> [t]here is no (i) action, suit, claim, proceeding or investigation pending or threatened against [Sebastian], at law or in equity, or before or by any federal, provincial, state, municipal or other governmental department, commission, board, bureau, agency, court, or instrumentality, domestic or foreign . . . which, if adversely determined, would question the validity of, or prevent the consummation of, the transactions contemplated by this [Assignment] Agreement.[29]

According to the Assignment Agreement, Sebastian's representations constituted "a material inducement to the General Partner to approve the assignment of the [Devon] Interest and the admission of [CPR] as a substituted Limited

---

[27] *Id.* ¶¶ 160–62.
[28] *Id.* ¶ 139.
[29] *Id.* ¶ 140; Assignment Agreement at 2–3.

Partner."[30]  Sebastian did not disclose to the Devon Park Entities at the time of the transfer of the Devon Interest from Sebastian to CPR that Sebastian had purported to sell the Devon Interest to VBI in 2012.[31]

Devon GP did not test or investigate Sebastian's representations in the Assignment Agreement.[32]  Sebastian represented to the Devon Park Entities that CPR was ultimately controlled by Vik Sr.[33]  CPR, as part of the Assignment Agreement, submitted a Confidential Investor Questionnaire to the Devon Park Entities which identified "Carmelo Polanco Rondon" as the owner of CPR and "Rolando Castillo" as director of CPR.[34]  Devon GP approved the transfer of the Devon Interest from Sebastian to CPR.[35]  As part of the Assignment Agreement, CPR granted Devon GP a power of attorney with respect to certain documents related to the limited partnership.[36]

---

[30] Am. Compl. ¶ 141; Assignment Agreement at 2.
[31] Am. Compl. ¶ 144.
[32] *Id.* ¶ 143.
[33] *Id.* ¶ 145.
[34] *Id.* ¶ 146.
[35] *Id.* ¶ 147.
[36] *Id.* ¶ 135.  The Amended Complaint alleges that "[t]he Assignment Agreement grants Devon Park, as the Delaware General Partner, a power of attorney to act on behalf of CPR," however, the Assignment Agreement does not grant a general power of attorney, but rather the power to act on behalf of CPR with respect to certain listed types of documents related to Devon LP. *Compare id., with* Assignment Agreement ¶ 6.  Additionally, as noted above, Deutsche defines "Devon Park" in the Amended Complaint as both Devon GP and Devon LP, but the Amended Complaint alleges that the "Assignment Agreement grants *Devon Park*, as the Delaware General Partner, a power of attorney." Am. Compl. ¶¶ 6, 135.  "Devon Park" in this allegation must be Devon GP alone, not both Devon LP and Devon GP (both because the allegation notes as much, and because the Assignment Agreement states it is Devon GP that was granted the power of attorney).  This is one of numerous instances in the Amended Complaint where Deutsche makes an allegation about

Prior to the Assignment Agreement, with respect to the Devon Interest, the Devon Park Entities had dealings with Johansson, including during the negotiation of the Escrow Agreement.[37] Johansson also negotiated the transfer of the Devon Interest on behalf of both Sebastian and CPR.[38] Following the Assignment Agreement, the Devon Park Entities continued to copy Vik Jr. and Johansson on correspondence related to the Devon Interest,[39] who both continued to take an "active role" in the Devon Interest.[40]

### 4. The Escrow is Released and CPR Makes Further Pre-Payment

Following the date of the Assignment Agreement, on September 29, 2014, Sebastian and the Devon Park Entities sent joint written instructions to JP Morgan authorizing the release of the escrow funds to the Devon Park Entities.[41] The instructions noted that Sebastian's transfer of the Devon Interest was to be deemed

---

"Devon Park," but context suggests that Deutsche is alluding to only one of the two entities it has defined as "Devon Park." *See, e.g.*, *id.* ¶ 168 (alleging that "Devon Park wired $5,589,574 to CPR as part of a distribution to *Devon Park*'s limited partners") (emphasis added). For purposes of this Memorandum Opinion and the allegations being made in the Amended Complaint, there is no meaningful difference, and any confusion caused is not material. I do not hereafter note these inconsistencies, and where Deutsche has alluded in the Amended Complaint to "Devon Park," I too have used the defined term in the Memorandum Opinion for both entities together, the "Devon Park Entities" (that is, except in the following background section regarding distributions and winding down, which are clearly meant to mean distributions to Devon LP's limited partners and that Devon LP is winding, not distributions to Devon GP's limited partners and Devon GP's winding down).

[37] *Id.* ¶¶ 149–50.
[38] *Id.* ¶¶ 15, 148.
[39] *Id.* ¶ 157.
[40] *Id.* ¶ 156.
[41] *Id.* ¶ 151.

9

a "Termination Event" (as defined in the escrow agreement).[42]  As part of the Assignment Agreement, all remaining funds in the escrow account were released directly to the Devon Park Entities as a "prepayment" on future capital contributions.[43]  Additionally, CPR agreed to pay directly to the Devon Park Entities $2,528,305.18 as a further "prepayment" on future capital contributions.[44]  The release of the escrow and agreement by CPR to make an additional direct payment meant, per Plaintiff, that the Devon Park Entities received assurances that all future capital contributions related to the Devon Interest were pre-paid.[45]

### 5. Devon LP Begins to Make Distributions

On or about March 26, 2015, the Devon Park Entities wired $5,589,574 to CPR as part of a distribution to Devon LP's limited partners (the "First Distribution").[46]  On or about May 13, the Devon Park Entities attempted a second payment to CPR as part of a second distribution to Devon LP's limited partners, this time the wire transfer was rejected by Deutsche in its capacity as an intermediary

---

[42] *Id.*
[43] *Id.* ¶ 153.
[44] *Id.* ¶ 154.
[45] *Id.* ¶ 155.  It is not clear from the Amended Complaint that CPR did anything other than agree to make future capital contributions.  Deutsche alleges that CPR "agreed to pay" an amount directly to the Devon Park Entities as a "prepayment," but an agreement to pay is not a prepayment.  The Assignment Agreement itself states that CPR will "contribute to [Devon LP] $2,528,305.18 (the 'Prepayment') as a prepayment of [CPR]'s future Capital Contributions" (this amount would not be used to calculate partnership ownership percentages until the general partner issues a "Drawdown Notice"). Assignment Agreement ¶ 5(c).  However, the Assignment Agreement does not state a date or time period for CPR to make this "prepayment," nor does Deutsche allege in the Amended Complaint that it was in fact made.
[46] Am. Compl. ¶ 168.

10

bank (the "Failed Second Distribution").[47] On or about May 15, the Devon Park Entities attempted to use new wire instructions to make the distribution to CPR; this wire transfer was also rejected.[48] Vik Jr. and Johansson (and others on their behalf) then took certain steps and made certain proposals in an attempt to have this second distribution wired to CPR, including changing CPR's corporate name from Universal Logistics Matters, S.A. to CPR, suggesting alternative banks to receive the wire transfer, and suggesting further transfers of the Devon Interest (these further attempts to make distributions, together with the First Distribution and Failed Second Distribution, the "Distribution and Attempted Distributions").[49] The Devon Park Entities pointed out irregularities with the proposal, but continued to work with Johansson to clear anti-money laundering requirements and process distributions to CPR.[50]

In December 2015, Devon LP made another distribution to its limited partners, but not including Sebastian or CPR.[51] Aside from the First Distribution, Devon LP has not made further distributions to CPR.[52] Devon LP is in the process

---

[47] *Id.* ¶ 169.
[48] *Id.* ¶ 170.
[49] *Id.* ¶¶ 172–73.
[50] *Id.* ¶ 176. The Devon Park Entities questioned the validity of one of the entities that CPR proposed to further transfer the Devon Interest to and also noted that "[t]wo major banks have likely already filed suspicious activity reports" in connection with attempts to process the distributions." *Id.*
[51] *Id.* ¶¶ 177, 179.
[52] *Id.* ¶ 179.

of winding up its affairs pursuant to the terms of its partnership agreement and Delaware Law.[53]

   6. The Devon Park Entities Attempt to Intervene in Other Actions and CPR Seeks Arbitration

After prevailing in the English Action, Deutsche attempted to collect on the English Judgment with a series of actions in various courts, which are now either pending or stayed.[54] This included an action filed by Deutsche in the Supreme Court of the State of New York, New York County, against Vik Jr., Vik Sr., Sebastian and VBI on April 21, 2016 (the "2016 New York Enforcement Action").[55] On September 21, 2016, the Devon Park Entities filed a motion to intervene in the 2016 New York Enforcement Action.[56]

On March 15, 2017, CPR initiated an arbitration proceeding against the Devon Park Entities in Pennsylvania, in which CPR prevailed as the holder of the Devon Interest.[57] This arbitration award was affirmed by the United States District Court

---

[53] *Id.* ¶ 180.
[54] *See Deutsche Bank AG v. Vik et al.*, Index No. 161257/2013 (Sup. Ct. N.Y. Co.); *Deutsche Bank AG v. Sebastian Holdings, Inc. and Alexander Vik*, Dkt. No. X08-FST-CV13-5014167-S (Conn. Super. Ct.), amongst others.
[55] *Id.* ¶ 112.
[56] *Id.* ¶ 113.
[57] *Id.* ¶¶ 119, 121. CPR initiated the arbitration to recover the value of unpaid capital distributions from the Devon Interest, and the Devon Part Entities asserted a counterclaim against CPR seeking declaratory judgment on the enforceability of the Assignment Agreement. *See id.* ¶¶ 119–21.

for the Eastern District of Pennsylvania and, subsequently, the Third Circuit.[58]

However, a subsequent decision of an English court concluded that *Sebastian* is the rightful owner of the Devon Interest.[59] Neither of these decisions involved all parties who claim ownership of the Devon Interest, therefore the parties' conflicting contentions have not yet been heard by a court of competent jurisdiction that can afford all parties their due process rights.

### C.    *Procedural History*

Deutsche initiated this action on November 16, 2017, asserting claims for (1) recognition and (2) enforcement of the English Judgment against Sebastian, (3) a charging order against the Devon Interest pursuant to 6 *Del. C.* § 17-703, and (4) fraud and (5) conspiracy against all Defendants.[60] Devon LP answered the complaint on December 21, 2017, and asserted counterclaims and cross-claims for interpleader against Deutsche, Sebastian, and CPR, requesting this Court determine the rightful owner of the Devon Interest and the distributions associated with it.[61] This Court then entered a temporary restraining order on January 29, 2018 (the

---

[58] *See CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 240 (3d Cir. 2021). For procedural reasons not pertinent here, Deutsche was not able to participate in the arbitration.
[59] *See* Ltr. to Hon. Sam Glasscock III Ex. A, Dkt. No. 400 (the "English Decision").
[60] Am. Compl. ¶¶ 212–59 (asserting same causes of action as the original Complaint); *see* Verified Compl. ¶¶ 151–97, Dkt. No. 1.
[61] Interpleader ¶¶ 65–69.

"TRO"), to prevent Devon LP from making any distributions associated with the Devon Interest during the pendency of this action.[62]

Deutsche filed an Amended Complaint on October 12, 2020.[63] Sebastian,[64] CPR[65] and the Devon Park Entities,[66] in each case, filed Motions to Dismiss on November 13, 2020. After oral argument on February 17, 2021,[67] I issued a Memorandum Opinion on June 30, 2021 ("*Deutsche Bank I*") granting Motions to Dismiss filed by Sebastian and CPR (together, the "Jurisdictional Defendants"), which had challenged the jurisdictional basis under the Delaware long-arm statute and jurisdiction under the conspiracy theory.[68]

---

[62] Tr. of Jan. 29, 2018 Oral Arg. on Pl.'s Mot. for TRO and Rulings of the Ct. 101:23–112:13, Dkt. No. 96.

[63] Am. Compl.

[64] Def.-Crosscl. Def. Sebastian Hldgs., Inc.'s Mot. to Dismiss, Dkt. No. 329. Sebastian had previously filed a Motion to Dismiss the original Complaint and Devon LP's cross-claims on January 19, 2018. Def.-Crosscl. Def. Sebastian Hldgs. Inc.'s Mot. to Dismiss, Dkt. No. 59.

[65] Def. CPR Mgmt., S.A. fka Universal Logistic Matters, S.A. Renewed Mot. to Dismiss, Dkt. No. 332. Like Sebastian, CPR had previously filed a Motion to Dismiss the original Complaint and Devon LP's cross-claims on January 19, 2018. Def. CPR Mgmt., S.A., fka Universal Logistic Matters, S.A.'s Mot. to Dismiss the Compl. and Cross-Cls. pursuant to Ct. Ch. R. 12(b)(1), (2), (4)-(6), Dkt. No. 61. CPR had amended its original Motion to Dismiss on February 14, 2018. Def. CPR Mgmt., S.A. fka Universal Logistic Matters, S.A.'s Am. Mot. to Dismiss, Dkt. No. 97.

[66] Def. Devon Park Bioventures, L.P. and Devon Park Assocs., L.P.'s Mot. to Dismiss the Am. Compl., Dkt. No. 330. The Devon Park Entities had previously filed a Motion to Dismiss the original Complaint on December 21, 2017. Def. Devon Park Bioventures, L.P. and Devon Park Assocs., L.P.'s Mot. to Dismiss, Dkt. No. 16.

[67] *See* Tr. of February 17, 2021, Oral Arg. on Defs.' Mots. to Dismiss the Am. Compl. and the Crosscls. for Interpleader, Dkt. No. 368.

[68] *Deutsche Bank I*, 2021 WL 2711472, at *7–11. In that Memorandum Opinion, I held that the Jurisdictional Defendants did not subject themselves to Delaware long-arm service and did not have sufficient minimum contacts with this state to satisfy due process in exercise of jurisdiction over them. *Id.* at *8, 10–11.

14

Following a hearing on September 22, 2021,[69] I directed the parties to submit supplemental briefing to address only the jurisdictional issues regarding Deutsche's request for a charging order or Devon LP's interpleader claim, which were characterized as *in rem* or *quasi in rem* and supported by statutory jurisdiction.[70] I heard oral argument on April 25, 2022,[71] but a development in the litigation in England[72] necessitated further supplemental memorandums of law.[73]

On August 26, 2022, Deutsche filed a Motion for Sanctions against Sebastian and CPR.[74]

After receiving the supplemental memorandums, I heard supplemental oral argument on the Motions to Dismiss on July 31, 2023.[75] On October 31, 2023, I issued a Memorandum Opinion ("*Deutsche Bank II*") addressing the motions of the

---

[69] Tr. of 9.22.21 Tel. Scheduling Conf., Dkt. No. 376.

[70] Granted (Stipulation and [Proposed] Order Regarding Suppl. Br.), Dkt. No. 377.

[71] Tr. of 4-25-2022 Oral Arg. on Defs.' Mots. To Dismiss, Dkt. No. 391.

[72] Deutsche submitted a letter to this Court that attached a decision and order from an English court providing *inter alia* that the purported transfer of the Devon Interest from Sebastian to CPR was a pretense because Sebastian retained beneficial ownership of the Devon Interest at all times. *See* English Decision.

[73] I directed the parties to submit supplemental memorandums of law addressing the effect of the English court's decision on the Jurisdictional Defendants' remaining motions relating to *in rem* or *quasi in rem* jurisdiction regarding Deutsche's request for a charging order, Devon LP's interpleader claim, and Motions to Dismiss. Tr. of 9.27.22 Tel. Status Conf. on Pl.'s Mot. Suppl. Compl. 5:20–6:3, Dkt. No. 421.

[74] Deutsche Bank AG's Mot. for Sanctions, Dkt. No. 404 ("Mot. for Sanctions").

[75] Tr. of 7-31-2023 Tel. Supplemental Oral Arg. Concerning Defs.' Mots. To Dismiss – Held via Zoom, Dkt. No. 447.

Jurisdictional Defendants to dismiss for lack of *in rem* and *quasi in rem* jurisdiction and granted their motions.[76]

On December 11, 2023, Deutsche filed a Motion for Entry of Partial Final Judgment Under Rule 54(b), or in the alternative, an Application for Certification of Interlocutory Appeal Under Rule 42.[77] By Letter Opinion on January 2, 2024, I reserved on Deutsche's Motion for Entry of Partial Final Judgment, and denied Certification of Interlocutory Appeal.[78] Deutsche appealed to our Supreme Court.[79] Our Supreme Court refused Deutsche's application for interlocutory review on February 9, 2024.[80] In the interim, on December 22, 2023, CPR filed a Motion to Dissolve Temporary Restraining Order and Recover Damages Against the Bond.[81]

I granted an order governing supplemental briefing relating to the outstanding motions on July 17, 2024.[82] These outstanding motions are: (1) the Devon Park Entities' Motion to Dismiss, (2) Deutsche's Motion for Entry of Partial Final Judgment, (3) Deutsche's Motion for Sanctions, and (4) CPR's Motion to Dissolve

---

[76] *See Deutsche Bank II.*

[77] Deutsche Bank AG's Mot. for Entry of a Partial Final J. Under R. 54(B) or in the Alternative, Appl. for Certification of Interlocutory Appeal Under Rule 42, Dkt. No. 458.

[78] *Deutsche Bank AG v. Devon Park Bioventures, L.P.*, 2024 WL 18244 (Del. Ch. Jan. 2, 2024).

[79] Notice of Appeal from Interlocutory Order, Dkt. No. 467; Amended Notice of Appeal from Interlocutory Order, Dkt. No. 469.

[80] *Deutsche Bank AG v. Sebastian Holdings, Inc.*, 2024 WL 513708 (Del. Feb. 9, 2024) (TABLE).

[81] CPR Mgmt. S.A.'s Mot. to Dissolve Temporary Restraining Order and Recover Damages Against the Bond, Dkt. No. 463.

[82] Granted (Stipulated [Proposed] Order Governing Supplemental Briefing Relating to Outstanding Mots., filed on behalf of the parties), Dkt. No. 483.

the TRO (and recover damages against the bond).[83]  Following supplemental briefing, I heard oral argument on the outstanding motions on September 9, 2024.[84] I allowed Deutsche to provide, post-oral argument, certain citations to an action in England related to its Motion for Sanctions,[85] which I received on October 8, 2024.[86] After receiving responsive letters from Sebastian and CPR,[87] I considered the matters submitted as of October 16, 2024.

## II. ANALYSIS

Sebastian and CPR have been dismissed, on jurisdictional grounds, from the claims brought in the Amended Complaint and from the cross-claims brought by the Devon Park Entities.  Of the claims brought in the Amended Complaint, the only ones that now remain are fraud and conspiracy against Devon LP and Devon GP. The Devon Park Entities previously moved to dismiss these claims under Court of Chancery Rule 12(b)(6), failure to state a claim.  Following the dismissal of the claims (and cross-claims) against Sebastian and CPR, I allowed the Devon Park Entities to make additional submissions with respect to their Motion to Dismiss, wherein the Devon Park Entities asserted (as a separate basis for dismissal) that

---

[83] *Id.*
[84] Tr. of 9-9-2024 Oral Arg. on Outstanding Mots., Dkt. No. 509.
[85] *Id.* at 103:10–104:1.
[86] Ltr. to the Honorable Sam Glasscock III from Stephen C. Norman Regarding the Sept. 9, 2024 Hr'g, Dkt. No. 511.
[87] Ltr. from William M. Kelleher, Esq. to V.C. Sam Glasscock III Responding to Deutsche Bank's Ltr. of Oct. 8, 2024, Dkt. No. 512; Correspondence to The Honorable Sam Glasscock III from K. Tyler O'Connell, Esq. Regarding Deutsche's Oct. 8, 2024 Ltr., Dkt. No. 513.

17

Sebastian and CPR are necessary and indispensable parties and their absence merits the dismissal of the claims against the Devon Park Entities under Court of Chancery Rule 12(b)(7).[88]

In the interim, the litigation has continued. Deutsche requests an Entry of Partial Final Judgment, presumably so that it can begin an appeal. Sebastian and CPR are now both dismissed from this action; CPR has therefore moved for the TRO—that currently prevents distributions related to the Devon Interest to flow to CPR—to be dissolved. Lastly, during the pendency of this litigation, Deutsche brought a Motion for Sanctions against Sebastian and CPR for discovery abuses (alleging, among other things, spoliation); while the mandated discovery in this case has concluded, Deutsche bases its Motion for Sanctions on an order related to Vik Jr. from an English court that was issued after discovery concluded. Deutsche requests either default judgment or an adverse inference in favor of jurisdiction against Sebastian and CPR.

I find below that Deutsche has "fail[ed] to state a claim upon which relief can be granted"[89] against Devon LP and Devon GP, which resolves all the claims brought by Deutsche in its Amended Complaint. As a result, Deutsche's Motion for

---

[88] Dismissal under Court of Chancery Rule 12(b)(7) is for "failure to join a party under Rule 19." Ct. Ch. R. 12(b)(7). Court of Chancery Rule 19 in turn governs the required joinder of parties (if joinder is feasible and if joinder is not feasible). Ct. Ch. R. 19.

[89] Ct. Ch. R. 12(b)(6).

Entry of Partial Final Judgment is moot. The Motion for Sanctions is not resolved *per se* by granting the Devon Park Entities' Motion to Dismiss, but I find the Motion for Sanctions is not warranted, and deny it.

*A. The Devon Park Entities' Motion to Dismiss the Fraud and Conspiracy Claims Under Rule 12(b)(6)*

1. Standard of Review

I begin with the Devon Park Entities' Motion to Dismiss under Court of Chancery Rule 12(b)(6). The standard of review for such a motion is well established:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[90]

The Court should not, however, "accept every strained interpretation of the allegations, credit conclusory allegations that are not supported by specific facts, or draw unreasonable inferences in the plaintiff's favor."[91]

---

[90] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted) (internal quotations omitted).

[91] *City of Fort Myers Gen. Emps.' Pension Fund v. Haley*, 235 A.3d 702, 716 (Del. 2020) (internal quotations omitted); *see also Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 972 (Del. Ch. 2000) (explaining that the court may "disregard allegations which are merely conclusory and lack factual support").

19

2. <u>Deutsche Has Failed to Plead a Claim of Fraud Against the Devon Park Entities</u>

Under Delaware law, to state a claim for fraud, a plaintiff must allege:

> (1) a false representation made by the defendant; (2) the defendant knew or believed the representation was false or was recklessly indifferent to its truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or refrained from acting in justifiable reliance on the representation; and (5) damage resulted from such reliance.[92]

Fraud consists not "merely of overt representations," but "may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak."[93]  When basing a fraud claim on active concealment, a plaintiff:

> must show that a defendant took some action affirmative in nature designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim, some artifice to prevent knowledge of the facts or some representation intended to exclude suspicion and prevent inquiry.[94]

Court of Chancery Rule 9(b) provides heightened pleading standards for fraud, that is "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[95]  A complaint alleging fraud must therefore allege: "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended

---

[92] *Valley Joist BD Hldgs., LLC v. EBESCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021) (internal citation omitted).
[93] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).
[94] *Transdigm Inc. v. Alcoa Global Fasteners, Inc.*, 2013 WL 2326881, at *6 (Del. Ch. May 29, 2013) (internal citation omitted).
[95] Ct. Ch. R. 9(b).

to gain by making the representations."[96]  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[97]

Deutsche's fraud claim against the Devon Park Entities is based on Devon GP's approval of the transfer of the Devon Interest from Sebastian to CPR, the First Distribution from Devon LP to CPR, and the subsequent (failed) efforts by the Devon Park Entities to make further distributions from Devon LP to CPR.  These actions, Deutsche alleges, were taken by the Devon Park Entities to aid Sebastian in avoiding paying the English Judgment, which the Devon Park Entities either knew of or were recklessly indifferent to.

Plaintiff's flagship claim in this action is that Sebastian and CPR engaged in a fraudulent transfer of the Devon Interest, to avoid satisfaction of (a portion of) the English Judgment from the Devon Interest.  I assume that this allegation was well-pled, but its pursuit in Delaware has been frustrated by lack of jurisdiction over Sebastian and CPR here.  The fraud alleged against the Devon Park Entities, on the other hand, must be based on actions of those entities themselves.  There is, as the Devon Park Entities point out, a critical flaw in Deutsche's theory of fraud committed by the Devon Park Entities; no pre-existing relationship has been pled between the Devon Park Entities and Deutsche at the time of the Assignment

---

[96] *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) (citing *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 145 (Del. Ch. 2003)).
[97] Ct. Ch. R. 9(b).

Agreement or the Distribution and Attempted Distributions. The Amended Complaint is devoid of contact between Deutsche and the Devon Park Entities during which the Devon Park Entities could have made false representations to Deutsche.[98] Neither has Deutsche alleged a duty owed to it by the Devon Park Entities to speak, in other words, that the Devon Park Entities had an obligation to inform Deutsche of the transfer of the Devon Interest or of the Distribution and Attempted Distributions. Deutsche avers that for a claim of fraud based on active concealment there is no requirement that a defendant have a pre-existing duty to speak.[99] Assuming this to be a correct statement of the law, however, in such case the Devon Park Entities would still have had to taken an "action affirmative in nature designed or intended to prevent"[100] the discovery of the facts underlying the fraud claim. Such action is not pled here.

If Deutsche's fraud claim against the Devon Park Entities is that they actively concealed the transfer of the Devon Interest and the subsequent Distribution and

---

[98] Deutsche writes in briefing that "CPR's and [the Devon Park Entities'] roles in concealing the purported transfer and/or their silence in the face of their knowledge of the sham transaction, English Judgment, and [Sebastian]'s efforts to squirrel away funds constitutes a false representation for the purposes of pleading fraud." Deutsche Bank AG's Answering Br. in Opp. To Defs.' Mot. to Dismiss 33, Dkt. No. 339 ("Deutsche Answering Br."). However, it cannot be that the Devon Park Entities' alleged concealment is an *overt* false representation when the Devon Park Entities did not make any overt representations to Deutsche. As such, I understand Deutsche's argument to be that a "false representation" can be made not only overtly, but also by concealment (which I analyze below).

[99] *Transdigm Inc.*, 2013 WL 2326881, at *6 ("A claim of fraud based on active concealment does not require a showing that the defendant had a pre-existing duty to speak.").

[100] *Id.*

Attempted Distributions, this argument again suffers from a lack of nexus with Deutsche. For a properly pled claim, Deutsche would have to allege an action taken by the Devon Park Entities to conceal the transfer of the Devon Interest and the distributions to CPR (prerequisite to the next requirement that such action was taken with the intention to conceal). Deutsche states in briefing that the Devon Park Entities have concealed from Deutsche "[Sebastian]'s continued ownership of the Devon Interest and facts concerning the Assignment Agreement,"[101] but for support Deutsche cites to its allegations in the Amended Complaint that Devon GP approved the transfer of the Devon Interest (without testing or investigating representations made by Sebastian, knowing that Johansson represented both Sebastian and CPR, and knowing that conflicting statements had been made about CPR's ownership), as well as the fact that the Devon Park Entities made and attempted to make distributions to CPR. I fail to find in those allegations (or elsewhere in the Amended Complaint) any action taken by the Devon Park Entities to conceal the Assignment Agreement or the Distribution and Attempted Distributions.

Deutsche's remaining argument is that the actions of the Devon Park Entities in approving the transfer of the Devon Interest and in the Distribution and Attempted Distributions amounted to actions of concealment. First, I note that Deutsche does not allege any action in connection with the approval that had the effect of

---

[101] Deutsche's Answering Br. 33.

concealment, or represented the intent to conceal anything from Deutsche. The English Judgment was awarded prior to the Assignment Agreement and to the Distribution and Attempted Distributions; however, the Devon Park Entities were not parties to the English Action. Deutsche makes a purely conclusory allegation that the Devon Park Entities knew or were recklessly indifferent to the English Judgment at the time of the transfer, but fail to point to an act of concealment.

The Devon Park Entities argue strenuously that the other elements of common-law fraud are lacking from the well-pled allegations of the Amended Complaint. But since Plaintiff has failed to plead with specificity a false representation or intentional act of concealment on the part of the Devon Park entities, I decline to consider the matter further.

### 3. Deutsche Has Failed to Plead a Claim of Conspiracy Against the Devon Park Entities

Deutsche also brings a claim that the Devon Park Entities were members in a civil conspiracy with Sebastian and CPR. The elements of civil conspiracy are: "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage."[102] To prevail at trial, a plaintiff would have to prove "knowing participation" in the conspiracy[103] (in other

---

[102] *Nicolett, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del. 1987).
[103] *OptimisCorp v. Waite*, 2015 WL 5147038, at *57 (Del. Ch. 2015), *aff'd*, 137 A.3d 970 (Del. 2016) (TABLE).

words, that a defendant was in an actual "confederation" with another conspirator), but to survive a motion to dismiss, Plaintiff here need only "allege well-pleaded facts from which I can infer that the alleged [tort] 'was knowable' and that [the Devon Park Entities] were 'in a position to know it.'"[104] This pleading-stage requirement, I note, requires "well pled" facts supporting an inference that a defendant was in a position to know of the wrongful conduct. It is not a license to plead parties into the conspiracy based purely upon conclusory allegations of knowledge or ability to know.

Deutsche argues that it has stated a claim for fraudulent transfer against Sebastian and CPR as the underlying unlawful act, and that, in approving the transfer, the Devon Park Entities were involved. Fair enough. The issue remaining, however, is whether Deutsche has adequately pled knowing participation in the tort, even at this pleading stage. In order for an inference to arise that the Devon Park Entities assisted the shielding of Sebastian's assets from recovery against the English Judgment—by Devon GP approving the transfer of the Devon Interest and Devon LP making and attempting to make distributions to CPR, an entity not subject to the English Judgment—Deutsche alleges that the Devon Park Entities knew or were

---

[104] *Great Hill Equity P'rs IV, LP* v. *SIG Growth Equity Fund I, LLP*, 2014 WL 6703980, at *21 (Del. Ch. Nov. 26, 2014) (quoting *Iotex Commc'ns. Inc. v. Defries*, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998)).

25

recklessly indifferent to the English Judgment,[105] but this is simply a conclusory allegation. As "material inducement" to Devon GP to approve the transfer (and admit CPR as a limited partner), Sebastian represented to CPR in the Assignment Agreement that the transfer would not frustrate vested interests or otherwise be tortious.[106] This representation is not itself conclusive, of course, but is significant in light of the purely conclusory allegations to the contrary. Plaintiff fails to explain how it was knowable to an entity doing business in Pennsylvania that one of its limited partners was subject to a money judgment in England. Plaintiff points to (1) the lack of testing or investigation into the representations made in the Assignment Agreement, (2) the conflicting statements on who owned CPR, (3) the presence of Johansson as an agent for both Sebastian and CPR (and Vik Jr.'s continued role after the transfer) and (4) the failure of wire transfers and the irregular proposals from CPR for alternative methods, as evidence that the Devon Park Entities should have been suspicious that the representations made in the Assignment Agreement were bogus, but that does not make, to my mind, the English Judgment knowable to the Devon Park Entities, or put the entities in a position to know. Even at the pleading stage, the "knowable/in a position to know" requirement is designed to allow the

---

[105] Am. Compl. ¶ 244 ("[Devon GP] joined the conspiracy by approving the transfer knowing or being recklessly indifferent to [the English Judgment]").
[106] *Id.* ¶¶ 140–41. *See* representations from Assignment Agreement quoted *supra* p. 7.

court to make a reasonable *inference* of knowing participation. I find no such inference justifiable here.

To begin with, Deutsche faults the Devon Park Entities for not testing the representations made by Sebastian and CPR in the Assignment Agreement. As noted, this lack of investigation, in the face of assurances to the contrary in the form of representations, does not in my mind lead to a reasonable inference that the Devon Park Entities knew of the English Judgment or were recklessly indifferent to it. Deutsche has not alleged, for example, that the Devon Park Entities' normal practice was to conduct such investigation, and it deviated from that practice here.

Deutsche next argues that the conflicting statements on ownership of CPR and the continued presence of Johansson and Vik Jr. as representatives of CPR should have given the Devon Park Entities reason to be suspicious. However, Deutsche does not allege that the Devon Park Entities were told that the Devon Interest was being transferred to a third party with no connection to Sebastian or Vik Jr.[107] In fact, Deutsche alleges that the Devon Park Entities were told CPR was controlled by Vik Sr. A more innocuous rendition (at least for the Devon Park Entities) of the allegations is that a general partner of limited partnership was approached by one of

---

[107] I acknowledge that, as Deutsche notes in its Amended Complaint, Sebastian and CPR claim to be unrelated entities. Am. Compl. ¶ 15. For purposes of the Devon Park Entities' Motion to Dismiss, the relevant facts are what the Devon Park Entities were allegedly told (or not told) about any connection between Sebastian and CPR, not the position that Sebastian and CPR have taken in this or other actions.

27

its limited partners, who, for its own reasons, requested to transfer its limited partnership interest to an entity that appeared to be "related" in some way, and the general partner granted the request. This does not imply, to my mind, knowing participation in the tort.

Before turning to the failed distributions, I note that Deutsche conjectures that the Devon Park Entities participated in the conspiracy for monetary reasons, the release of the escrow to Devon LP and pre-payment of capital contributions not already covered by the escrow. The escrow was established in 2012, two years prior to the Assignment Agreement, and per the Amended Complaint was intended to cover pre-payment of future capital contributions. The Amended Complaint contains no allegation as to why the parties deemed an escrow necessary for this purpose at that time.[108] From the immediate release of those escrow funds in 2014 (as opposed to, I assume, the gradual release as capital contributions became due) and agreement to pre-pay any other capital contributions, I may infer some benefit to the Devon Park Entities.[109] However, I do not find it reasonable to infer from the fact that the transfer worked a benefit to the Devon Park Entities, that the benefit was compensation for complicity in a tort. That the Devon Park Entities received

---

[108] The Escrow Agreement itself notes that Devon LP and Sebastian entered in an agreement on June 18, 2012, which resolved certain disputes between them, and in connection with that settlement, Sebastian agreed to deposit in escrow certain funds. *See* Escrow Agreement.
[109] *But see supra* note 45.

funds from the release of the escrow and received assurances for any capital contributions not already covered by that escrow, without more, is unpersuasive. It appears to reflect only that the Devon Park Entities had pre-existing concerns with Sebastian's ability to make capital contributions when due, and when Sebastian requested to transfer the Devon Interest to what appeared to be a related, but new, entity, the Devon Park Entities sought to make sure those concerns were still addressed.

This leaves the Distribution and Attempted Distributions, by which point in time the Devon Park Entities had already received the release of the escrow and the additional pre-payment of capital contributions. That is to say, there is no alleged monetary incentive at the time of the Distribution and Attempted Distributions for the Devon Park Entities to aid Sebastian and CPR in their tort. The fact that the distributions (other than the First Distribution) to CPR failed and the Devon Park Entities were, for a time, willing to engage with CPR to find alternative solutions to make distributions, despite the red flags of denied wire transfers and suspect alternative proposals, does not raise a reasonable inference that the Devon Park Entities did so intending to aid Sebastian and CPR in tortious action against Deutsche. That Devon LP made one distribution and attempted others, without more, leads only to the reasonable inference that Devon LP was winding down and

29

making distributions in its normal course to all of its limited partners, of which it considered CPR one, albeit a problematic one.

I have above analyzed the Devon Park Entities participation in the Assignment Agreement and the Distribution and Attempted Distributions and found that the Amended Complaint does not support a reasonable inference that the Devon Park Entities engaged in those actions with knowledge (or reckless indifference) to the English Judgment. In other words, Deutsche has insufficiently pled that the Devon Park Entities acted to aid Sebastian and CPR's efforts to hide assets from Deutsche. As a result, I cannot draw a reasonable inference that the Devon Park Entities were confederates of Sebastian and CPR. Without this first element of civil conspiracy, I find that Deutsche has failed to state a claim for civil conspiracy against the Devon Park Entities.

Having dismissed the fraud and conspiracy claims against the Devon Park Entities on Court of Chancery Rule 12(b)(6) grounds, I need not reach the Devon Park Entities' argument on Court of Chancery Rule 12(b)(7).[110]

*B. Deutsche's Motion for Sanctions is Denied*

Deutsche has, pursuant to Court of Chancery Rule 37, moved to impose sanctions against Sebastian and CPR for discovery abuses. This Court previously

---

[110] Nor do I need to consider whether the charging order statute, *6 Del. C. § 17-703*, provides the sole remedy against the Devon Park Entities.

30

permitted limited discovery in the case related to jurisdiction over Sebastian and CPR. That discovery process was marred by dispute, but was completed. Deutsche seeks to revisit the abuses it alleged in discovery, relying on an English court's June 24, 2022 Judgment and Order[111] and July 15, 2022 Sentencing Judgment (together, the "English Orders").[112] The relevant substance of the English Orders is that Vik Jr. was found to have failed to comply with the *English court's* discovery order. That court found that he did so deliberately, in the English court case against him (not this instant matter). Deutsche also claims that it first learned of Vik Jr.'s practice of not retaining emails when it was described in the proceedings for the English Orders. Per Deutsche, Sebastian and CPR are simply conduits of Vik Jr. and it reasons, based on the English Orders, that Sebastian and CPR have therefore also suppressed and altered evidence during the discovery process in this matter. Deutsche asks that I either award it default judgment against Sebastian and CPR or find an adverse inference on jurisdiction in its favor and set aside *Deutsche Bank I* and *Deutsche Bank II*.

Sebastian and CPR both argue that Deutsche is simply rehashing the discovery issues it raised previously, which this court resolved. Sebastian also disputes that Deutsche was not previously aware of Vik Jr.'s email retention practices.

---

[111] Ex. 1 to Mot. for Sanctions.
[112] Ex. 2 to Mot. for Sanctions.

I note that discovery was complete in this matter, and importantly such discovery was limited to jurisdiction. I do not fault Deutsche for bringing its Motion for Sanctions,[113] but I do not find a basis in the English Orders to revisit the alleged shortcomings in discovery *on jurisdiction* (much less one that warrants the extreme measure of awarding default judgment or even an adverse inference that would set aside *Deutsche Bank I* and *Deutsche Bank II*). I fail to find (and Deutsche has not provided) a nexus between the spoliation that Deutsche alleges is reflected in the English Orders and the jurisdictional issue that was the only subject of discovery in this case. In other words, I fail to find evidence related to jurisdiction over Sebastian and CPR that would have been spoliated (as opposed to evidence that goes toward the merits of the fraud claim against Sebastian and CPR, which was not the subject of discovery and which this Court has not reached because I have found that I do not have jurisdiction over those entities).

Deutsche argues that I should find *Harris v. Harris*[114] persuasive; in that case, at the pleading stage, the court found an adverse inference that certain defendants "participated in [an action] to a degree where it is fair to attribute that Delaware-directed act to them for jurisdictional purposes,"[115] because their phones, when imaged, contained no texts (one of the defendants admitted to deleting all texts and

---

[113] And I decline to shift fees under Court of Chancery Rule 37(a)(4)(B) as requested by Sebastian.
[114] 2023 WL 193078 (Del. Ch. Jan. 16, 2023).
[115] *Id.* at *21.

the other refused to answer questions regarding the existence of text messages).[116] The court in *Harris v. Harris* found it was reasonable to infer from the deletion of the texts that those texts "would show extensive communications that would bolster the allegations regarding the involvement of [those defendants] in the [Delaware-directed act]."[117]  In other words, participation in the action at issue in *Harris v. Harris* was the basis to establish personal jurisdiction over those defendants. However, that is not the case here.  Assuming that Vik Jr. purposefully deleted or concealed emails, it might be reasonable to infer at this pleading stage that those emails demonstrated that the transfer of the Devon Interest from Sebastian to CPR was a fraud committed by Sebastian and CPR to conceal Sebastian's assets from recovery by Deutsche.  However, participation in that fraud by itself (if established by the foregoing adverse inference) does not confer jurisdiction to this Court over Sebastian and CPR, under the rationale of *Deutsche Bank I* and *Deutsche Bank II*. And I do not find it reasonable to infer that the alleged spoliated evidence would otherwise bolster the jurisdictional arguments against Sebastian and CPR (nor was Deutsche able to provide at oral argument any convincing hypothetical example of an email or document that was spoliated and would go towards jurisdiction).[118]

---

[116] *Id.* at *20.  This was in addition to evidence that others allegedly involved also deleted their texts and where logs showed that the group of individuals exchanged tens of thousands of texts, including the day before and after an event critical to the action. *Id.*

[117] *Id.*

[118] Tr. 9-9-2024 Oral Arg. on Outstanding Mots. 86:22–89:22, Dkt. No. 509.

The issue of spoliation, it appears, has been properly litigated in another jurisdiction, but the result therefrom does not provide a sufficient basis for reopening the discovery issues in this case.

*C. The Motion for Entry of Partial Final Judgment is Moot*

As previewed above, the dismissal of the claims against the Devon Park Entities now means all claims in the Amended Complaint (and cross-claims) have been dismissed; the Motion for Entry of Partial Final Judgment is therefore moot as a full judgment has now been rendered.

## III. CONCLUSION

For the reasons stated above, I conclude that Deutsche has failed to state a claim for fraud or for civil conspiracy against the Devon Park Entities. Therefore, the Devon Park Entities' Motion to Dismiss under Court of Chancery Rule 12(b)(6) is GRANTED. As reasoned above, Deutsche's Motion for Sanctions is DENIED. As noted above, Sebastian's and CPR's Motions to Dismiss (both against the Amended Complaint and against Devon LP's cross-claim) were previously granted. As a result, no claims remain in Deutsche's Amended Complaint. Deutsche's Motion for Entry of Partial Final Judgment is therefore MOOT.

With regards to the TRO, the relevant parties should confer and agree (or disagree) on the action to now be taken regarding the Devon Interest, and the extent

to which, and how, that interest should be preserved pending an appeal. I will schedule a brief conference on this issue.

The parties should also submit an appropriate form of order.